### Henry Sontag v. Thomas J. O'Hare, Adm'r.

1. LANDLORD AND TENANT—*Liability for Failure to Make Repairs.*— When a landlord at the time of leasing premises agrees to make certain repairs and fails to do so, he will be liable for injuries resulting from his neglect to make such repairs.

2. EVIDENCE—*From Which Presumptions Arise.*—Presumptions are derived wholly and directly from the circumstances of the particular case by means of the common experience of mankind by the ordinary reasoning powers and without the aid of artificial rules of law.

3. INSTRUCTIONS—*Who Can Not Complain of Error in.*—An instruction in a civil case requiring a degree of proof not required by law in such cases s err oneous, but the person in whose favor it is given can not be heard to complain.

**Trespass on the Case,** for damages; death from negligence, etc. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1897. Affirmed. Opinion filed February 14, 1898.

LOESCH BROTHERS & HOWELL, attorneys for appellant.

SULLIVAN & McARDLE, and P. L. McARDLE, attorneys for appellee.

MR. JUSTICE WINDES DELIVERED THE OPINION OF THE COURT.

Appellee, as administrator of the estate of Vincenza Labriola, deceased, sued appellant in case to recover damages for injuries sustained on August 24, 1894, which, it is alleged, caused the death of deceased on September 16 following. A trial before the Circuit Court and a jury resulted in a verdict and judgment of $1,200, from which appellant appealed.

The errors urged are, first, that the trial court should have directed a verdict for appellant; second, that the verdict and judgment are contrary to the weight of the evidence; and, third, that the court erred in modifying appellant's fourth instruction and in giving it as modified.

The first point was expressly withdrawn on oral argument.

As to the second, the evidence shows, in substance, that appellant, about June 1, 1894, rented to one

Angelo Labriola, the husband of deceased, the first floor flat in rear of building No. 182 West Polk street, Chicago; that he occupied said premises, with his family, including deceased, on and prior to August 24, 1894, for a month or more; that at the time the premises were rented, appellant agreed to repair them, including the stairs and porch leading thereto, and the railing to the porch, but failed to repair the railing, which was in bad condition, was rotten and worm eaten; that deceased, who was the wife of Angelo Labriola, on August 24, 1894, came out of said flat on the porch or platform in rear thereof, with her infant child in her arms, placed her hand on the railing, leaned against it, and called her "big boy," when the railing broke and gave way, and she fell to the ground several feet below, striking her head and shoulder against a wagon, was picked up senseless and carried into the house, and so remained for two or three hours; that she was a large woman, about eight months advanced in pregnancy; was thirty-five years old, and had previously borne eight or nine children. She died September 16, 1894. There was a conflict in the evidence as to whether appellant had agreed to make said repairs, but when it is all considered there was sufficient to justify the jury in finding that he agreed at the time of the renting to make them. This would make appellant liable in this case, if Mrs. Labriola's injuries caused her death. Mendel v. Fink, 8 Ill. App. 378; Platt v. Farney, 16 Id. 216.

The principal contention of appellant, and the only one made on oral argument, was that the cause of death was not shown by appellee; that the evidence fails to show that the injuries resulted in the death of deceased.

The physician who was called to Mrs. Labriola on August 24, the same day of the injury, testified:

"I remember attending Vincenza Labriola in August, 1894. At that time she was suffering from a broken left clavicle or collar bone, and had a cut on the side of her head between the ear and top of the head along the right side. My recollection is that I saw her in the evening on August 24, 1894. The clavicle is what we call in common language the collar bone. It is a bone that extends from the breast bone over to what you call the shoulder bone. It is a bone five or six inches long and shaped like an Italian 'F.' The scalp wound was about an inch and a half long and cut through the skin. My recollection is that she was conscious. She was a woman of medium height and rather stoutly built. I could not say whether she was pregnant, because I did not make an examination to that end. Her appearance would indicate that she was pregnant. I would think her pregnant.

"Q. Did you attend her after that day?

"A. I saw her until the sixteenth of September, dismissed the case at that time.

"Mr. McArdle: This woman that you saw, fell a distance of five or six feet to the ground, striking as she fell down, a wagon, holding in her arms a baby, to receive the injuries you have described, what would be the result of those injuries?

"A. They may result in many ways. The result might be one way or the other, one thing or another. In her case she recovered from those injuries.

"The Court: She recovered from the injuries?

"A. She did.

"Mr. McArdle: Do you know whether that woman was living on the sixteenth of September?

"A. I saw her on the sixteenth of September.

"Mr. McArdle: Suppose, doctor, a woman of thirty-five or thirty-six years of age—

"The Court: This woman.

"MR. McARDLE: This woman that you saw, fell a distance of five or six feet to the ground, striking as she fell down, a wagon, the hub of a wagon, holding in her arms a baby, to receive the injuries which you have described, what would be the result of those injuries?

"A. They may result in many ways. The result might be one way or another, or one thing or another. In her case she recovered from those injuries."

### CROSS-EXAMINATION.

"On the sixteenth of September, 1894, the lady was in good condition. She had got along well from her injuries. I did not attend her after that. On the sixteenth of September she was up and around."

This witness was not present when Mrs. Labriola died, was not a willing, if not a hostile witness to appellee (as we think appears from other parts of his testimony), and is certainly mistaken when he says he saw her on the day of her death, and that she had recovered from her injuries, as is shown by the following testimony:

Teresa Uferira, for plaintiff, testified: "She was picked up senseless and carried into the house. Mrs. Labriola died fifteen or twenty days after the injury. At the time she was injured she was eight months pregnant. Between the time of the accident and her death I went to see Mrs. Labriola every day. She was suffering all the time with pain. I didn't see her up after she got injured. When I saw her she was in bed."

### CROSS-EXAMINATION.

"I didn't see her up and around. I have not seen her up. I lived in the second story of the next building toward the river."

Theresa Fioro, for plaintiff, testified: "Live at 224 Polk street. I knew Vincenza Labriola in her lifetime. I don't remember the exact date she was injured. She fell with her shoulder on the wheels of the wagon. After she fell she stayed on the ground. I saw her every day after the accident until she died. She must have been eight months pregnant when she fell. She fell clear to the ground after she struck the wagon. Her head was bruised."

Mary Labriola, for plaintiff, testified: "Live at 163 West Polk street. I knew Vincenza Labriola in her lifetime. Knew her before the accident; to her I am a sister-in-law. I saw her during her illness after the injury. I was there all the time from the first day till she died. She was unconscious two or three hours after the accident. I waited on her and gave her medicines. She had marks on her body on the right side and her back; it was black and blue. It was on the right hand side of the middle of the stomach. I saw those marks when I put on clean clothes. She couldn't wait on herself. She was not up and around the house during her sickness. She was up for an hour or an hour and a half or so, and she had to lay down. She was in pain day and night. She got up for an hour, or an hour and a half a day, you know, and the rest of the time she was in bed. I don't remember the date when she died. I remember it was Sunday morning, but I can't tell what month it was. It was about fifteen or twenty days after she was injured, but I can't remember sure. She spit blood two or three days before she died. It was black; you couldn't stand the smell, chunks of meat like, and blood. I noticed this about three days before she died. Her stomach was awfully soft and black. When she got up she had pain. She had pain all the time; she couldn't take rest, sit down nor neither stay

in bed; she couldn't take rest anywhere. Mrs. Labriola's stomach was in. a bad condition, hanging down."

### CROSS-EXAMINATION.

"Her stomach was kind of loose. I mean the belly. Mrs. Labriola had eight or nine children. Four were living. I did not tell the doctor about the appearance of Mrs. Labriola's body. She did not say anything about it to the doctor in. my presence. I did not tell the doctor anything that she said. I don't remember how long after the doctor quit coming that Mrs. Labriola died. She never went out of doors. Mrs. Labriola could not have gone out of the house without my knowing about it. I was there in the daytime, but went home nights."

The evidence of these three witnesses we think shows a condition of deceased, at the time of and following the injuries, amply sufficient to justify the jury in finding that Mrs. Labriola's death was caused by her injuries received on August 24. While it is true that her death must have resulted from her injuries, before there could be a recovery in this case, it was not necessary, as contended by appellant, that there must be *positive proof* by appellee of the actual cause of death—only that there should be proof from which fair minded, intelligent men, familiar with the usual and ordinary affairs and experiences, of life, could reasonably infer the cause of death. The author in Jones on Evidence, Sec. 9, says, quoting from Mr. Greenleaf in speaking of presumptions of fact, "these merely natural presumptions are derived wholly and directly from the circumstances of the particular case, by means of the common experience of mankind, without the aid or control of any rules of law whatever." The author further says: . "They are inferences drawn by

the ordinary reasoning powers and without the aid of any artificial rules of law," and also, in Sec. 103, he says, "When the facts are established from which presumptions may be legitimately drawn, it is the province of the jury to deduce the presumption or inference of fact."

See, also, Peoria & P. U. R'y Co. v. Clayberg, Adm'r, 107 Ill. 644.

Appellant asked the court to give the following instruction, viz.:

"The jury are instructed as a matter of law, that the plaintiff in this case can not recover for the death of said Vincenza Labriola upon September 16, 1894, because of the injuries she received from a fall off of a platform or steps upon the twenty-fourth day of August, 1894, unless the plaintiff in this case has shown *by competent evidence* that the death was the direct result of such injuries; and the jury are instructed that they can not presume that her death was caused by such fall upon August 24, 1894, in the absence of *positive proof by plaintiff of the actual cause* of the death of said Vincenza Labriola."

The court modified this instruction, viz:

"The jury are instructed as a matter of law that the plaintiff in this case can not recover for the death of said Vincenza Labriola upon September 16, 1894, because of the injuries she received from a fall off of a platform or steps upon the twenty-fourth day of August, 1894, unless you believe, from the evidence, that the death was the direct result of such injuries; and the jury are instructed that they can not presume that her death was caused by such fall upon August 24, 1894, in the *absence of proof which satisfies your minds that the actual cause of the death of said Vincenza Labriola was the injury received by such fall.*"

The instruction, as asked, left the jury to determine *what was competent evidence*, and also told the jury that the plaintiff must make *positive proof* of the actual cause of death. It was for the court to determine what was competent evidence, and as we have said, the plaintiff should not have been required to prove the cause of death by *positive proof*.

The instruction, as given, was erroneous, if at all, in favor of appellant, because it says, in effect, that the minds of the jury should be *satisfied* that the actual cause of death was the injuries received by the fall. That is a degree of proof not required in civil cases. Protection Life Ins. Co. v. Dill et al., 91 Ill. 174; Ruff et al. v. Jarrett, 94 Ill. 475; White v. Gale, 14 Ill. App. 274.

The judgment is affirmed.