HARRIET M. MILES *vs.* SAMUEL P. JANVRIN, administrator.

Suffolk.    March 13, 1907. — November 25, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Landlord and Tenant.*

Where a landlord agrees with his tenant either to make specific repairs or, generally, to make such repairs as may be needed from time to time upon the premises, as the premises of the tenant, and then negligently fails to repair after notice from the tenant, he is not liable in tort for an injury received by the tenant and due to the want of repair of which he was notified.

Where a landlord agrees with his tenant to maintain the premises, the use of which is let, in such a condition that they will be safe for the tenant and those claiming under him to use them, and to relieve the tenant from any duty to provide for their safety or to notify the landlord of their want of repair, the landlord is liable in tort to the tenant or any one claiming under him for an injury which is due to a want of repair of such premises.

While a landlord, who lets premises in a condition so unrepaired that they are a nuisance and agrees to keep them in repair, is liable in tort to any person other than the tenant who is injured because of such condition on the ground that by the letting he has authorized the maintenance of the nuisance, he is not in such case liable in tort to the tenant.

TORT for personal injuries suffered by the plaintiff by reason of her falling upon defective doorsteps of a dwelling house occupied by her and her husband under an oral agreement between her husband and the defendant's intestate, it being alleged that the steps were negligently permitted by the defendant's intestate to be out of repair. Writ in the Superior Court for the county of Suffolk dated December 19, 1904.

At the trial, which was before *Bell*, J., there was evidence introduced by the plaintiff tending to show that the defendant's intestate agreed with the plaintiff's husband to repair the steps in question and to keep them in repair, keep "them in good condition so that no one would get hurt."

The presiding judge instructed the jury that, if the defendant's intestate merely made an agreement with the plaintiff's husband to do certain specified repairs upon the premises, that would not make her liable for an accident of the kind which happened to the plaintiff; but that, if the defendant's intestate "made an agreement to keep the premises in repair as long as. that tenancy lasted, then that would be an agreement which would transfer from the tenant to the landlord the duty to keep the premises, keep the steps in repair"; that, in order to establish liability on the part of the defendant, the jury must find in the first place that the injury to the plaintiff "happened through the want of repair of this lower flight of steps, and in the next place that the care of those steps, the duty of repairing them had been by agreement between Mr. Janvrin and Mr. Miles, transferred from the place where the law put it, to wit: upon Mr. Miles, to Mrs. Janvrin, and that it was transferred, and then because of the negligence of Mr. Janvrin, and in consequence of that negligence, in his failure to repair the steps after the duty was transferred to him, this accident occurred and the plaintiff was injured."

At the request of the plaintiff and subject to exception by the defendant, the presiding judge ruled that, "if the jury find that the husband of the deceased [meaning the defendant's intestate], at the time of renting of the house, promised or in any form of words agreed to repair the steps and keep them in good repair and safe condition, and that he had notice of their unsafe condition, and that the plaintiff at the time of the accident was herself in the exercise of due care, the plaintiff was entitled to recover."

*H. E. Perkins*, (*W. M. Robinson* with him,) for the defendant.
*J. A. McGeough*, for the plaintiff.

LORING, J.  It was held by this court in *Tuttle* v. *Gilbert Manuf. Co.* 145 Mass. 169, that a landlord was not liable for personal injuries suffered by a tenant by reason of the omission

on the part of the landlord to repair the floor of a barn which he had agreed to repair as part of the contract of a lease of the barn. And the general doctrine was laid down there that a negligent omission to repair the premises of another is not the ground of an action of tort. The same conclusion was reached in *Cavalier* v. *Pope*, [1905] 2 K. B. 757; *S. C.* on appeal, [1906] A. C. 428; *Brodtman* v. *Finerty*, 116 La. 1103. See also *Collins* v. *Karatopsky*, 36 Ark. 316, 324. These were all cases where the agreement made by the landlord was to make specific repairs.

The presiding judge in the case at bar instructed the jury that there was a difference between an agreement by a landlord to make a specific repair and an agreement by him to keep the demised premises in repair generally during the term of the lease; and that the defendant's liability in the case at bar depended upon the question whether the defendant agreed to put the steps here in question in repair or whether he agreed to keep them in repair generally during the term of the lease.

In our opinion, however, a tenant does not go far enough to charge a landlord in tort for personal injuries caused by an omission to make needed repairs, when he has made proof that the landlord agreed, as one of the terms of the demise, to keep the premises in question in repair generally during the term of the lease. To charge a landlord in tort for personal injuries caused by a negligent omission to make needed repairs, not only must the tenant prove that the landlord agreed to keep the premises in repair, but he must go one step further and prove that the landlord agreed to maintain the premises in a safe condition for his (the tenant's) use. That is to say, he must prove that during the term of the lease, so far as their safety is concerned, the premises to be kept in repair are to remain in the control of the landlord (as they would have remained had there been no lease), with nothing but a right in the tenant to use them. In short, that, so far as their safety is concerned, the landlord's relation to the premises to be kept in repair is the same as that of a landlord in case of common passageways in a tenement house, as to which see *Domenicis* v. *Fleisher*, 195 Mass. 281, and cases there collected. The only difference being that in a case like the case at bar the tenant has an exclusive use,

while in case of common passageways in a tenement house the use which the several tenants have is not exclusive.

The difference between the two cases is plain. To take the case now before us: It is one thing to agree to maintain a flight of steps for the use of a tenant in going to and from the house of which he has a lease, even where the steps are a part of the premises let; it is another thing to demise and let to him the steps as part of the premises of which the house is the main thing, and agree to keep the steps in repair.

In the first of these two cases, it is within the contemplation of the parties to the contract that the tenant of the house is to have a right to use the steps on the footing that they are safe at all times during the period covered by the agreement. In the second, if the landlord omits to make needed repairs when he ought to make them, the tenant has no right to use the premises which ought to have been repaired on the footing that they are in a safe condition; his right against the landlord in such a case goes no further than to have the repairs made at his landlord's expense. In respect to what is within the contemplation of the parties, there is no difference between a contract by the landlord to keep the premises of his tenant in repair generally during the term of the lease and a contract by a landlord to make specific repairs on the premises of the tenant. We repeat: There is a difference between a landlord's agreeing to maintain premises in a safe condition for the tenant's use and a contract to keep the tenant's premises in repair.

We have said that the landlord is liable if he has agreed to maintain a flight of steps for the use of a tenant in going to and from the house of which he has a lease, even when the steps are a part of the premises let. That requires a word of explanation. Where the arrangement between the landlord and the tenant is that during the term of the lease the landlord is to be responsible for the safety of a flight of steps which leads from the highway to the demised house, the direct way of carrying that arrangement into effect would be to give the tenant nothing but a right to use the steps. This would leave the steps in the control of the landlord, and, being in his control with an agreement to keep them in repair, the case would come within the principle of *Domenicis* v. *Fleisher*, 195 Mass. 281, and within

the decision in _Miller_ v. _Hancock_, [1893] 2 Q. B. 177. But in such a case it is possible for the parties to carry out that arrangement by including the flight of steps in the premises demised with an agreement by the landlord to become absolutely liable for the maintenance of them in a safe condition during the term of the lease. If such a contract were made by a stranger (for example by a carpenter) the contract would put the flight of steps in the control of the carpenter during the term of the lease, so far as necessary to insure their being in a safe condition, on the principle applied in _Quinn_ v. _Crimmings_, 171 Mass. 255, and _Wixon_ v. _Bruce_, 187 Mass. 232. There is nothing to prevent the same contract being made to carry out the arrangement between a landlord and tenant stated above, although, as we have said, the direct way of carrying out such an arrangement would be to give the tenant a right to use the steps only.

In the following cases the rule of _Tuttle_ v. _Gilbert Manuf. Co._ was applied to agreements to keep the tenant's premises in repair generally throughout the term of the tenant's lease: _Davis_ v. _Smith_, 26 R. I. 129; _Burdick_ v. _Cheadle_, 26 Ohio St. 393; _Brown_ v. _Toronto General Hospital_, 23 Ont. 599.

The law in New York seems to be in accordance with these cases. _Frank_ v. _Mandel_, 76 App. Div. (N. Y.) 413. _May_ v. _Ennis_, 78 App. Div. (N. Y.) 552. _Stelz_ v. _Van Dusen_, 93 App. Div. (N. Y.) 358. _Sherlock_ v. _Rushmore_, 99 App. Div. (N. Y.) 598. _Boden_ v. _Scholts_, 101 App. Div. (N. Y.) 1. _Hagin_ v. _Cayuga Lake Cement Co._ 105 App. Div. (N. Y.) 269. _Dancy_ v. _Walz_, 112 App. Div. (N. Y.) 355. See also in this connection _San Filippo_ v. _American Bill Posting Co._ 188 N. Y. 514, and _Reynolds_ v. _Van Beuren_, 155 N. Y. 120, and cases there collected.

Before the case of _Cavalier_ v. _Pope, ubi supra_, there was authority in England to the contrary. It was stated by Lopes, J. (as he then was), in _Nelson_ v. _Liverpool Brewery Co._ 2 C. P. D. 311, 313, that, if the landlord was under an obligation to make exterior repairs, an employee of the tenant could recover for injuries caused by his failure to make needed repairs on a chimney top which fell and caused the injuries to the tenant's employee there complained of. The plaintiff in that case un-

dertook to make out an obligation on the landlord to make exterior repairs by showing a custom by which exterior repairs were made by landlords. The case went off on the ground that all that was proved there was a practice among landlords to make external repairs for their own interest, and that a custom making it obligatory on a landlord to make such repairs was not proved. On the authority of this statement of Lopes, J., however, it was ruled by Phillimore, J., in *Cavalier* v. *Pope*, that a landlord, who had agreed to repair the floor of the kitchen let to the plaintiff's husband in consideration of the husband's agreeing to continue his lease of the premises, was liable for injuries suffered by the tenant's wife in falling through the floor which had not been repaired by the landlord in accordance with this agreement. That the original ruling made by Phillimore, J. in *Cavalier* v. *Pope* was made on the authority of this statement of Lopes, J., in *Nelson* v. *Liverpool Brewery Co.* see Collins, M. R. [1905] 2 K. B. at p. 762, and Lord Atkinson, [1906] A. C. at p. 431. This ruling was reversed in the Court of Appeals, *Cavalier* v. *Pope*, [1905] 2 K. B. 757, and in the House of Lords, [1906] A. C. 428; and the doctrine laid down by Lopes, J. was thereby overruled.

There is a case in the Circuit Court of the United States for the Southern District of New York, *Moore* v. *Steljes*, 69 Fed. Rep. 518, in which it was held that a landlord who had agreed to keep the leased premises in repair was liable for injuries suffered by one entering under the tenant, because the cause of the injury in that case antedated the lease. That is to say, because the premises let were a nuisance when let. In the opinion of Wheeler, J., in that case, the liability of the landlord in such a case to a third person was discussed. But there is no discussion there as to the proposition that one entering under the tenant stands on the same footing as a third person in that connection. That is assumed in that opinion without discussion.

If *Moore* v. *Steljes* were law in this Commonwealth, it would not help the plaintiff in her contention that the instructions given in the case at bar were correct. The presiding judge in the case at bar did not tell the jury that the defendant was liable if they found that the steps here in question were in a dangerous condition at the date of the lease. He told them that the

defendant was liable here in case he agreed to keep the steps in repair. But, although for this reason the decision in *Moore* v. *Steljes* is not authority for the instructions given, the doctrine in that case, if it is law, will be of importance in the ultimate disposition of the case at bar. For that reason we stop to consider it.

*Moore* v. *Steljes* is not law in this Commonwealth. The ground on which it is held that a landlord is liable to a third person for letting premises in a ruinous condition is that maintaining premises in a ruinous condition is a tort as against a third person who is injured by reason of their condition, and that letting premises in that condition is authorizing the continuance of the nuisance. See *Dalay* v. *Savage*, 145 Mass. 38. But it is not a tort as against the tenant for a landlord to demise to him premises in such a condition that they are a nuisance. See for example *Bowe* v. *Hunking*, 135 Mass. 380, and *Phelan* v. *Fitzpatrick*, 188 Mass. 237, and cases cited. And it is no more a tort as against the tenant and those entering under him to authorize him to continue the premises in that condition than it is to let such premises to him. It is also settled here that one entering under the tenant has no greater rights than the tenant. See for example *Dalton* v. *Gibson*, 192 Mass. 1. One of the grounds of decision in *May* v. *Ennis*, 78 App. Div. (N. Y.) 552, was that on which *Moore* v. *Steljes, ubi supra,* was decided.

There is a case in the Court of Appeals of Kentucky, *Stillwell* v. *South Louisville Land Co.* 22 Ky. Law Rep. 785, not reported in the regular series of its reports, in which it was assumed without discussion that a landlord who had agreed to make repairs on leased premises is liable to make compensation for injuries caused by his failure to make needed repairs. The only point discussed in the opinion in that case is whether the plaintiff there was barred by his contributory negligence. That decision does not help the contention made in support of the charge of the presiding judge in the case at bar, because the agreement in *Stillwell* v. *South Louisville Land Co.* was an agreement to make specific repairs and therefore, if it is an authority at all, it is an authority that *Tuttle* v. *Gilbert Manuf. Co.* was wrongly decided. It was admitted by the presiding judge in his charge

in the case at bar, and it was admitted at the argument here, that *Tuttle* v. *Gilbert Manuf. Co.* was rightly decided. This decision, therefore, does not help the plaintiff in his present contention.

The only other case to the contrary is a case in an inferior court in the State of Illinois. (*Sontag* v. *O'Hare*, 73 Ill. App. 432.) It would seem from the two cases on the authority of which *Sontag* v. *O'Hare* was decided, (*Mendel* v. *Fink*, 8 Ill. App. 378, and *Platt* v. *Farney*, 16 Ill. App. 216,) that the porch there in question was a common porch not let to the tenant but which the tenant had a right to use. That is to say, it would seem that that case belongs to the same class of cases as those relating to the common passageways of a tenement house. Whether that is or is not the true explanation of *Sontag* v. *O'Hare* is not material here; for, if that is not the true explanation of that case, all that it amounts to is a decision for which no reasons are given but two decisions which do not support the conclusion to which the court came.

In addition there is a general statement at the conclusion of the opinion in *Thompson* v. *Clemens*, 96 Md. 196, 211, " that a landlord under contract to repair may under some circumstances be liable for damages for personal injuries by reason of a negligent failure to make repairs." There is a headnote substantially to that effect where no opinion is reported in *Veal* v. *Hanlon*, 123 Ga. 642, and another in *Perez* v. *Rabaud*, 76 Texas, 191, where there is an opinion but nothing in the opinion which gives countenance to the headnote. In all these cases the plaintiff was held not entitled to recover.

In determining whether an agreement by a landlord with a tenant to keep in repair generally a portion of the premises during the term of the lease is a contract to maintain those premises in a safe condition for the tenant's use, or is a contract to keep them in repair as the premises of the tenant, the necessity of a notice from the tenant to the landlord that repairs are needed before the landlord can be taken to be in default under his contract is important. Where by force of the contract the landlord is to maintain the premises in a safe condition for the tenant's use, no notice is necessary. But where the landlord's contract is to keep the premises in repair as the premises of the tenant dur-

ing the term of the lease, as matter of implication notice is necessary before the landlord is in default. For cases where it was held that notice was necessary see *Hutchinson* v. *Cummings*, 156 Mass. 329; *McLean* v. *Fiske Wharf & Warehouse Co.* 158 Mass. 472, 474; *Marley* v. *Wheelwright*, 172 Mass. 530; *Cummings* v. *Ayer*, 188 Mass. 292.

It was of cases where the landlord's agreement is to keep the tenant's premises in repair, as distinguished from an agreement to keep them in a safe condition, that Lathrop, J., said in *Galvin* v. *Beals*, 187 Mass. 250, 252: " The general rule in this Commonwealth must be considered as settled that a tenant cannot recover against his landlord for personal injuries occasioned by the defective condition of the premises let, unless the landlord agrees to repair, makes the repairs, and is negligent in making them. *Bowe* v. *Hunking*, 135 Mass. 380. *Tuttle* v. *Gilbert Manuf. Co.* 145 Mass. 169. *McKeon* v. *Cutter*, 156 Mass. 296. *McLean* v. *Fiske Wharf & Warehouse Co.* 158 Mass. 472. *Marley* v. *Wheelwright*, 172 Mass. 530." This was repeated by Sheldon, J., in *Shute* v. *Bills*, 191 Mass. 433, 437.

In the class of cases with which we are dealing here, even when the premises are included in the lease, the question for the jury is whether the defendant's agreement was to make the repairs then needed upon the steps, and such other repairs as might be needed from time to time during the term, with an implied understanding that the tenant should look out for the condition of the premises and inform him when anything should be done, or whether it was an absolute agreement to maintain the steps in a safe condition for the tenant and those claiming under him, and to relieve the tenant from any duty to provide for their safety. If a part of a landlord's undertaking is an agreement in terms to make repairs, and if the circumstances are such as to leave the meaning doubtful, it is to be determined from all the language used and from all the circumstances, whether his meaning is to make repairs merely as a mechanic might contract to make them, only upon notice that they are needed, or whether his undertaking is intended to be broader, including a duty to observe for himself the condition of the premises and provide for their safety.

It is not necessary in this case to consider under what circum-

stances an action can be maintained directly against the landlord who has agreed to keep in repair premises demised to a tenant, to avoid circuity of action. See *Payne* v. *Rogers*, 2 H. Bl. 349; *Lowell* v. *Spaulding*, 4 Cush. 277, 279; *Milford* v. *Holbrook*, 9 Allen, 17, 21. It is enough in the case at bar to point out that the plaintiff was the wife of the tenant and for that reason could not have sued him; and that, not being able to sue the tenant at all, she could not sue the landlord to avoid circuity of action.

*Exceptions sustained.*