MINNIE F. STEWART *vs.* LIVINGSTON CUSHING & another, trustees.

Suffolk. November 11, 1909. — January 6, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Landlord and Tenant. Negligence. Evidence*, Relevancy.

Where, by the terms of a contract of letting of a tenement to be used for habitation, the landlord does not retain control of the system of drainage nor agree to make repairs, if the drains become defective during the tenancy he is not liable to the tenant in an action of tort for a failure to make such repairs. Where the landlord does assume such an obligation and fails to make repairs after notice that they have become necessary, the remedy is an action for a breach of contract.

Repairs and examinations made by a landlord voluntarily and gratuitously, upon the complaint of a tenant, do not impose on the landlord an obligation to make repairs which he has not assumed by the contract of letting, and merely make him liable for injuries caused by the work of repair being done negligently.

In an action by a tenant against her landlord for injuries alleged to have been caused by negligence in repairing a drain pipe, evidence offered by the plaintiff to show that a usual method in removing foreign substances from drain pipes is to break holes in the pipes and afterwards to patch them is inadmissible, because proving what other plumbers might have done does not tend to show that the defendant's plumbers broke the pipe which leaked and caused the injuries.

TORT for injuries to the plaintiff's health, received by her while living in premises at 33 Windsor Street in Boston belonging to the defendants, alleged to have been caused by defective drainage. Writ dated January 17, 1905.

At the trial in the Superior Court before *Hitchcock*, J., it appeared in evidence that the plaintiff moved into the premises in the autumn of 1899, under an oral agreement with one Frederickson who was an agent of the owners, and that there was no agreement between the plaintiff and the agent at that time in regard to any repairs on the premises. The defendants became

the owners of the premises in September, 1903, and Frederickson continued as agent for them in charge of the premises with authority to make repairs.

The premises, so far as material to the case, consisted of a kitchen, dining room and coal cellar in the basement, the flooring of which was laid upon the soil. Between the soil and the wooden flooring ran the drain pipes from the kitchen sink to the main sewer.

It appeared that the plumbing had been put in new throughout the house during the year 1899–1900, and that no other plumbing work was done until the plaintiff complained to Frederickson in April, 1904, that her sink was stopped up. The testimony of the plaintiff on this point was as follows: " Q. What next was done in regard to the plumbing? A. There wasn't anything else done after they went away until 1904 in March, particularly, that I noticed. My sink stopped up again. — Q. What did you do? A. I went over to Mr. Frederickson who was the agent for the house and told him my sink was stopped up, he turned around to a young man named Clifford and told him to go over. — Q. What did you say to him? A. I told him that my sink was stopped up, the water wouldn't run off. — Q. And in response to that what did he say? A. He turned around to a fellow in the office and said to a fellow by the name of Clifford to go over and clean out the drain pipe. — Q. Did he go over with you? A. He came over with me. — Q. What did he do? A. He cleaned out the drain pipe in the cellar and underneath the floor. — Q. Did you see him do it? A. No, sir, I just seen him go in there. I didn't watch while he was doing it. — Q. The sink drained off after that? A. Yes, sir."

It appeared that Clifford was about seventeen or eighteen years of age at the time, that he used to drink and that there was no record of his having a plumber's license as required by statute.

The plaintiff testified that about two weeks after Clifford had cleaned out the sink drain she noticed a bad odor in her basement and requested Frederickson to attend to it. The testimony of the plaintiff on this point was as follows: " Q. Now shortly after this time or after the sink had been cleaned out did you go and

see Mr. Frederickson again? A. Yes, sir, I smelled a bad odor in my basement and I went to Mr. Frederickson again, and he sent two plumbers over, Scott and Collins, to see what the trouble was. They told me it was surface water. — Q. Did they make an investigation? A. Yes, sir. — Q. And they reported to you? A. Surface water. — Q. Was anything further done? A. No. Then the odor got worse and I commenced to feel sick and sent for the board of health. — Q. When you complained of the stopping up of the drain, when you went to Mr. Frederickson and complained of the stopping up of the drain what did he say? A. He turned around and told him to go over with me, with Mrs. Fisher, and clean out the drain pipe. — Q. When you complained of the odor some time in April following to Mr. Frederickson, what did he say then — What did Mr. Frederickson say when you complained? A. He sent over two plumbers. — Q. What did he say? A. When I complained of what? — Q. Of the odor? A. He said he would send the plumbers right over. — Q. Did he do so? A. Yes. — Q. Did they go over with you at that time? A. No. — Q. How soon afterwards did they come? A. It wasn't only just a little while, the same day."

The odor not disappearing but becoming stronger, the plaintiff sent for the board of health, and as a result of an inspection the floors were torn up and it was found that there was a hole broken in the elbow of the drain leading from the sink. This elbow was a new piece of pipe in good condition but the edges of the hole were rusty. The dirt under the floor was wet and slimy. There was evidence that no one had been in the basement at work or had taken up the flooring since 1900.

The plaintiff offered to show that it was a usual method of cleaning pipes to break holes therein in order to remove any foreign substance and then patch them up again, but the judge ruled that this was inadmissible, and the plaintiff excepted. There was evidence tending to show that the hole in the pipe was the width of the house distant from the sink.

At the close of the plaintiff's evidence, the judge ruled that there was no evidence of negligence on the part of the defendants and ordered a verdict for the defendants. The plaintiff alleged exceptions to the refusal of the judge to admit the evi-

dence offered as stated in the preceding paragraph, and to the ruling of the judge that there was no evidence of negligence.

*L. H. Lindsay*, for the plaintiff.

*H. D. McLellan*, for the defendants.

BRALEY, J. By the terms of the contract of letting, the landlord neither retained control over the system of drainage, nor agreed to make repairs for the tenant's use, if it became defective during the tenancy. If the defendants had assumed, but neglected to perform this duty after notice that repairs had become necessary, the plaintiff's remedy would have been an action for breach of contract. *Cummings* v. *Ayer*, 188 Mass. 292. *Miles* v. *Janvrin*, 196 Mass. 431; *S. C.* 200 Mass. 514.

It appeared in evidence that, after complaints by the plaintiff that the sink drain had become obstructed and that a noxious odor was noticed in the basement, the defendants caused the pipe to be examined and the obstruction removed, and, the odor continuing, they again sent plumbers to ascertain the cause. But as these repairs or examinations were voluntary and gratuitously made, no liability was imposed upon them, unless the work was negligently performed. *Gill* v. *Middleton*, 105 Mass. 477. *Kearines* v. *Cullen*, 183 Mass. 298. *Phelen* v. *Fitzpatrick*, 188 Mass. 237.

If subsequently as the result of an investigation by the board of health, to whom the plaintiff complained, it was ascertained, upon a removal of the floors in the basement, that the odor causing her sickness emanated from a break in the elbow of the drain pipe, the uncontradicted evidence negatived any connection whatever between the defect and the acts of the defendants' workmen. *Galvin* v. *Beals*, 187 Mass. 250, 253.

The evidence offered, that in removing foreign substances a usual method was to break holes in pipes, which were afterwards patched, was inadmissible. To prove what other plumbers might have done did not furnish proof that the defendants' plumbers had disturbed or broken the elbow. *French* v. *Sabin*, 202 Mass. 240.

The plaintiff having failed to offer any evidence of the defendants' negligence, her exceptions must be overruled.

*So ordered.*