Elizabeth M. **SANDERSON** and Lawrence
E. Sanderson, Plaintiffs-Appellees,

v.

**BERKSHIRE–HATHAWAY,** Inc., Defend-
ant-Appellant.

No. 314, Docket 24434.

United States Court of Appeals
Second Circuit.

Argued May 17, 1957.

Decided June 17, 1957.

A. Luke Crispe, Ralph Chapman, Brat-
tleboro, Vt., for appellant.

John S. Burgess, Brattleboro, Vt., for appellees.

Before CLARK, Chief Judge, and SWAN and POPE, Circuit Judges.

POPE, Circuit Judge.

This was an action brought by Lawrence E. Sanderson and Elizabeth M. Sanderson, his wife, citizens of Vermont, against Berkshire Hathaway, Inc., here called Berkshire, a Massachusetts corporation, to recover damages suffered by them in consequence of injuries sustained by Mrs. Sanderson when she fell down the steps of the house occupied by them as tenants of Berkshire, which was the owner of the premises. A jury returned a verdict in favor of Mrs. Sanderson for her personal injuries and a verdict in favor of Mr. Sanderson for loss of his wife's services and for expenses incurred by him in consequence of such injury.

The premises which the Sandersons occupied under an oral lease from Berkshire, was a two story house in a row of contiguous dwelling houses or apartments extending for an entire block, situate at Brattleboro, Vermont, where Berkshire operated a cotton mill. These houses Berkshire kept for the purpose of providing housing for its employees, and they were leased to no other persons. Mr. Sanderson, an employee of Berkshire, and his wife had been tenants here since 1950. On the evening of February 8, 1954, Elizabeth started to leave the house by the back door. After opening this door which swung in, she pushed open a storm door and stepped on the top step of a set of four wooden stairs leading down to a cement slab at the ground level. This step was "wobbly" and unsteady, and when Mrs. Sanderson placed her weight on it she started to fall; she tried to catch herself by grabbing the storm door, but it gave way and fell with her. Plaintiff's complaint alleged that the defective step, which caused the fall, was due to the defendant's negligent failure to repair the premises.

The first contention is that defendant owed no duty upon which liability here could be predicated. Lawrence Sanderson testified that the arrangement under his lease from Berkshire was that the latter "takes care of all the repairs." The Vermont rule is that a lessor's covenant to repair, standing alone, does not impose on him a liability for injuries received by the lessee. Soulia v. Noyes, 111 Vt. 323, 326–327, 16 A.2d 173. Appellant says that the record here shows no more than a mere agreement to repair, and hence, under the case just cited, there could be no liability. Such an agreement, it says, means that Berkshire was not required to repair except on notice from the tenant. See Fiorntino v. Mason, 233 Mass. 451, 124 N.E. 283.

The case was submitted to the jury upon instructions that the defendant might be held liable for negligence in failing to keep these steps in adequate repair if its arrangement was that it was "to keep these premises in a safe condition for occupancy." In Soulia v. Noyes, supra, the court noted that the Massachusetts decisions "draw a distinction between agreements by the landlord as a part of the letting to make repairs in the lease premises, and express agreements to maintain the premises in a safe condition for occupancy," commenting that in the latter case "it is considered that the landlord has reserved control, and consequently may be held liable."[1] The court ex-

[1] The court cited a number of Massachusetts cases to this effect, among them Miles v. Janvrin, 196 Mass. 431, 82 N.E. 708, 13 L.R.A.,N.S., 378, in which the court said: "To charge a landlord in tort for personal injuries caused by a negligent omission to make needed repairs, not only must the tenant prove that the landlord agreed to keep the premises in repair, but he must go one step further and prove that the landlord agreed to maintain the premises in a safe condition for his (the tenant's) use. That is to say, he must prove that during the term of the lease, so far as their safety is concerned, the premises to be kept in repair are to remain in the control of the landlord (as they would have remained had there been no lease), with nothing but a right in the tenant to use them. * * * There is a difference between a landlord's agreeing to maintain

pressed no view as to whether it would recognize this distinction for the facts in Soulia did not present a situation of that kind. In thus instructing the jury the trial court took the view that the Vermont court would, in a case like this, approve the distinction thus made in the Massachusetts cases cited. As indicated in the language used in Miles v. Janvrin (note 1, supra), the reason behind such a rule is that where the landlord has undertaken to maintain any portion of the premises in a safe condition for occupancy, he is deemed, at least for the purposes of making repairs, to have retained control thereof.[2]

■ We see no reason to question the trial court's determination that the rule just stated with reference to an agreement to keep premises in a safe condition for occupancy is law in Vermont. We do not understand that appellant seriously questions this; its point is rather that there was no evidence from which the jury could find that any such agreement was made.

■ The arrangement here was an oral one; and its terms must be arrived at through an evaluation of all the testimony, not only as to the language used by the parties, but as to all the surrounding circumstances.[3] Witness Rooney, defendant's superintendent, testified: "Q. You say that the policy of the Company is to keep the premises in reasonably safe condition for occupancy? A. We try to maintain the property in reasonably good condition; we always have, and I think we do."

■ In determining what the agreement was in respect to the repair of the back steps and whether the arrangement was such that the lessor retained control over them in the sense that it had undertaken to keep them in a safe condition for occupancy, it is proper to take into consideration the situation of the parties, the subject matter, and the object and purposes sought to be accomplished in leasing these premises to the defendant's employees. Cf. Vermont Kaolin Corporation v. Lyons, 101 Vt. 367, 143 A. 639, 642. It was also proper for the court and jury to consider the conduct of the parties over the period of the Sandersons' occupancy as bearing upon their construction of the lease arrangement, their understanding of it, and what they intended. Idem.

■ It is noteworthy here that the defendant owned not only the block of tenements in which the Sandersons' house was located, but a large number of other tenements as well, aggregating in all some 73 units. All of them were kept for the accommodation and exclusive use of the defendant's employees. The seemingly low rent of $18 per month charged to the Sandersons for their four room two story apartment permits an inference that these units were kept and maintained to attract and hold its employees, and that the defendant was thus keeping and operating them as an adjunct to its main business. Hence a general policy of regular inspection and repair to keep them safe for occupancy would not be improbable. Defendant's master mechanic testified that he frequently inspected the tenement areas. As he put it, "I am on the property all the time," explaining that he would "come around" at frequent intervals, whether he was called up to do so or not. Under the direction of the master mechanic was a maintenance crew of 14 men, a portion of whose duties included maintaining and

the premises in a safe condition for the tenant's use and a contract to keep the tenant's premises in repair."

2. 35 Harv.L.Rev. 633, particularly the discussion in the footnote on p. 640; and compare Prosser on Torts, 2d Ed. p. 474.

3. Miles v. Janvrin, supra (82 N.E. at page 711): "If a part of a landlord's undertaking is an agreement in terms to make repairs, and if the circumstances are such

as to leave the meaning doubtful, it is to be determined from all the language used and from all the circumstances, whether his meaning is to make repairs merely as a mechanic might contract to make them, only upon notice that they are needed, or whether his undertaking is intended to be broader, including a duty to observe for himself the condition of the premises and provide for their safety."

repairing the houses. The superintendent, Mr. Rooney, testified that the maintenance crew frequently went to the tenements and inspected conditions there; that it was part of their duties "to keep their eyes open for anything that might be of importance." He testified that every four or five years the defendant of its own accord, as a regular practice, reconditioned the steps, "Anything that is out in the weather, or anything that needs repair, we try to do it every so often." [4] On one occasion during the fall preceding the accident, one of the maintenance crew, a Mr. Pike, was at the Sanderson kitchen fixing supports under the sink. While cutting his boards on the back steps, he noticed the condition of the steps and sometime later returned to the house and nailed into place the same loose board on the step which later caused Mrs. Sanderson's fall. He did not at that time do anything to repair the obviously weakened support or newel post which apparently was in part the cause of the insecure condition of the step, and he did not correct the defect, for the step continued insecure. In July, 1954, following the accident to Mrs. Sanderson, defendant, pursuant to its regular practice in that regard, rebuilt and replaced all of these steps, and also reconditioned or rebuilt those in the rear of other houses in this row.[5]

■ We are of the opinion that the evidence taken as a whole was sufficient to warrant the trial court in submitting to the jury the question whether there was an agreement whereby the landlord was to maintain these premises in a safe condition for occupancy.[6] If the jury found, as its verdict showed it did, that there was such an agreement, then the evidence of negligence on the part of the defendant was more than sufficient. Pike saw the defect in the step, but although he nailed the board he left the step still unsteady because of his failure to replace the defective newel post. Photographs received in evidence and shown to represent fairly the condition of the step at the time of the accident, make it plain that defendant must have known and observed the need for repairs. We do not understand that appellant questions the sufficiency of the evidence to prove negligence providing there was a sufficient case to establish a duty to keep the steps in a reasonably safe condition for use.

Appellant also urges that its motion to set aside the verdicts and for judgment notwithstanding the verdicts should have been granted because, as a matter of law, (a) the plaintiff Elizabeth Sanderson assumed the risk of her injury; and (b) she was guilty of contributory negligence.

■■ In submitting the case to the jury the court instructed upon the question of contributory negligence. No separate charge was given with respect to a defense of assumption of risk, denominated as such, and no exception was taken or objection noted at the appropriate time to the court's failure in that regard. We find it unnecessary to determine whether this failure to except or object prevented the defendant from urging assumption of risk as a ground for setting aside the verdict, for in our view the case was properly submitted to the jury. "Assumption of risk" may be used in two senses: (1) as a form of contributory negligence and (2) to indicate that de-

---

4. The master mechanic testified: "Q. About every so often did you send your crew out to do one type of repairs to all the tenements? A. On the porches we have to go through them about every three or four years; they get weather-beaten. Q. You do that periodically over those periods? A. Yes.

5. Although such evidence of subsequent repair would not be admissible as proof of negligence, it was proper and relevant upon the question whether the landlord

or the tenant was in control of this portion of the premises. See the cases collected at Wigmore, 3 Ed. Vol. 2, § 283, footnote 2.

6. On this point the court charged the jury: "If you find there was such, then you will pass to the consideration of the second question. If you find there was not any such agreement or understanding, then you should bring in a verdict for the defendant."

fendant had no duty to protect plaintiff from a particular risk. The charge on contributory negligence adequately covered the first sense. The charge on the agreement to keep the premises in safe condition covered the second sense because if the landlord made such an agreement he cannot invoke this defense. See James, Assumption of Risk, 61 Yale L. J. 141, 145, at note 24 (1952); Dean v. Hershowitz, 119 Conn. 398, 177 A. 262.

It is true that Mrs. Sanderson had used the defective step many times and she knew that the step "wobbled." She went up and down the steps many times a day. But the evidence also indicated that although she knew the steps were defective she had not seen or observed just how bad or how dangerous they were. Whether plaintiffs here were guilty of contributory negligence must be judged by applying to them the standard of what a reasonable man of ordinary prudence would do under like circumstances. "[Negligence] can be ruled as a matter of law only when the facts are undisputed, and are so conclusive that but one reasonable inference can be drawn therefrom. If the evidence justifies opposing inferences, the question is always for the jury." Britch v. Town of Sheldon, 94 Vt. 235, 239, 110 A. 7, 10. We are of the opinion that the question of contributory negligence on the part of the Sandersons was properly one for the jury.

Although appellant does not list in its statement of questions involved any claim of error in the court's instructions,[7] yet in the course of its argument it refers to two respects in which it says there was error in the charge. The first is the refusal of the court to give defendant's requested instruction No. 4 as follows: "Occupation and control of the premises are not reserved through an agreement that the landlord will repair the premises but there must be competent evidence that the landlord did reserve occupation and control of the prem-

ises upon which the injury was sustained." But as we have noted, the court had told the jury that recovery could be had only if the agreement was to maintain the premises in a safe condition for occupancy. Thus the court said to the jury: "In this case the burden of proof is on the plaintiff to prove that the arrangement with the tenant was that the defendant was to maintain these premises in a safe condition for occupancy." In explanation of that required proof, the court said: "Generally speaking, the liability of a landlord for injuries caused by a defective condition of the premises has its foundation and reason in the fact of his possession and control. Where such possession and control are absent, there is no liability. * * * But, as I have just said to you, if you find there was an agreement by the landlord to keep these premises safe for occupancy, then it would have retained possession and control in the eyes of the law. However, as I have said, if there is an agreement between the landlord and the tenant that the landlord desires to or is to maintain the premises in a safe condition for occupancy, then it is considered that the landlord has reserved control and therefore may be held liable." Thus the court correctly informed the jury that the agreement proven must be this more extensive obligation to provide safe occupancy. We are of the opinion that the court adequately instructed the jury upon the point raised by defendant's requested instruction. No exception was taken, following the charge, that the court's language in giving its instruction on this point should have been clarified or enlarged.

Finally defendant says the court in its charge confused the jury by creating the impression that an agreement to keep the premises in repair was the same as an agreement to keep them in a safe condition for occupancy. Apparently this contention is based upon the manner in

7. Rule 17(a) (1) of this court, 28 U.S.C.A. provides that appellant's brief shall contain "A concise abstract or statement of the case, presenting succinctly the questions involved, the manner in which they are raised, and the errors claimed; * * *"

which one sentence in the court's instruction appears to read in the typewritten transcript.[8]

When we bear in mind that the charge was given to the jury orally, and we undertake to read this sentence aloud, it is immediately apparent that the jury could not have been misled. For read aloud, as the jury must have heard it, it is plain that the judge corrected himself midway of the sentence by pausing after the word repair and correcting his statement to read: "Keep these premises in a safe condition for occupancy." It seems clear that all who listened to the charge must have so understood the court, and this included counsel for defendant, for they took no exception on this ground. See Rule 51, Rules of Civil Procedure, 28 U.S. C.A. This is particularly true since, as previously indicated, the court more than once clearly referred to the required agreement as one to maintain the premises in a safe condition for occupancy. We find no error in the instructions given.

The judgments are affirmed.

---

8. "Thus, as I have said, the first question for you to determine is—Was there an agreement whereby the landlord was to keep these premises in repair; keep these premises in a safe condition for occupancy."