## BOWLING v. CARROLL.

### Opinion delivered January 17, 1916.

1. LANDLORD AND TENANT—COVENANT TO REPAIR FENCE—BREACH—DAMAGES.—Where a landlord fails to repair a fence according to a covenant contained in a written lease, the lessee may recoup as damages, what it would have cost him to make such repairs, but not the indirect and consequential damages flowing from such failure to repair, such as the destruction of crops by the trespass of cattle.

2. LANDLORD AND TENANT—COVENANT TO REPAIR FENCE.—LIABILITY OF LESSEE.—A written lease provided that the lessor would make certain repairs on the fence of the leased premises, this the lessor failed to do. Held, under the lease, the lessor could not recover

damages from the lessee, where the lessee did not repair the fence, and an orchard was damaged by reason of stock breaking into the same.

3.   LANDLORD AND TENANT—REPAIR OF FENCE—NOTICE BY TENANT.—Where a written contract of lease provided that the lessor should repair a certain fence on the leased premises, the lessee can not recover damages from the lessor for a failure to make such repairs, until he has given the lessor notice of the need of the same.

Appeal from Fulton Circuit Court; *J. B. Baker,* Judge; reversed.

*C. E. Elmore,* for appellant.

1.   Carroll violated the contract by failing to take "good care of the premises," and to pay the rent as he expressly stipulated. In fact, he did nothing that the contract states. He agreed to take "special good care of the orchard," and to repair the fence. He is not entitled to damages by reason of Bowling failing to comply with his contract. 39 Ark. 344, 347; 72 Ark. 3. It was the tenant's duty to repair the fence, and he is liable to the landlord for damages. *Ib.*

The court erred in refusing instruction No. 5 for defendant, and in refusing to give No. 9 as to the measure of damages. No. 10 should have been given. *Cases supra.*

*Lehman Kay,* for appellee.

When the rent was paid, appellant agreed to waive all damages. As to the damages to the orchard, the jury properly found for Carroll under the court's charge, for two reasons; Bowling waived all damages and Bowling failed to repair the fences as agreed. 39 Ark. 347; 19 *Id.* 684. The verdict is sustained by the evidence, and there in no error in the instructions. 57 Ark. 557; 23 *Id.* 208, 232; 13 *Id.* 474, 285; 50 Ark. 511; 27 *Id.* 517, and many others.

The damages were not excessive. 62 Ark. 326. This court will not disturb a verdict when supported by some legal evidence, although apparently against the preponderance of the testimony. There is no testimony as to logs, lumber, windows and shingles being destroyed by Carroll, and the loss to orchard and vineyard was occasioned by Bowling's own fault.

McCulloch, C. J. Appellant J. P. Bowling was the plaintiff below, and instituted this action against J. W. Carroll to recover damages done to the plaintiff's farm, which had been leased to the defendant under a written contract. The contract of lease contained a covenant that the lessor should "repair all fences that may need repairing and put same in good condition by Spring," and also contained a stipulation that the lessee should "take the best of care of said premises, and especially the orchard." The plaintiff alleged in his complaint that defendant had permitted stock and cattle to go into the orchard and destroy the growing fruit trees, grape vines, etc., and thereby caused damages in the sum of $150. He also alleged that the defendant had destroyed fencing and posts of the value of $20, and shingles of the value of $2, and barn logs of the value of $3.20, besides other damages to the premises.

The defendant filed an answer denying that he had permitted the damages alleged in the complaint, and also filed a cross-complaint against the plaintiff asking damages in the sum of $144 on account of the plaintiff's failure to perform his contract with respect to repairing the fence. The case was tried before a jury, and the trial resulted in a verdict in favor of the defendant for the sum of $50. The sum of $130 was the amount stipulated in the contract for the rental price of the premises for the year in question, and the agreement was that the rent should be paid on demand. The full amount was paid by the defendant—the last payment of $75 being made in April of that year. The payment included a credit of $5 which was allowed to the defendant for repairing the fence. The contention of the plaintiff is that he had the fence repaired, and that when the defendant made some complaint on account of repairs, they examined the premises carefully and defendant agreed to make the repairs on the fence that were found to be necessary, or that he desired to be made, for the sum of $5, which was allowed as a credit on the rent. The defendant denied that he agreed to make all repairs for $5, but testified that he only agreed

to repair a certain portion of the fence for that sum, and he says that when he made the last payment, the plaintiff promised to complete the repairs on the fence, but never did so. The defendant did not in fact make any repairs on the fence except the portion he claimed he was to do for the stipulated sum of $5. He testified that it would have cost about $60 to put the fence in good repair—that is to say, in addition to the amount which the plaintiff himself spent, and that which the defendant did in the way of repairs. The proof shows very clearly that cattle got into the orchard and the vineyard, and did considerable damage to the premises.

There are various assignments of error with respect to giving and refusing instructions. We will not undertake to discuss all of the assignments, but will mention only two which we deem important. The first one worthy of discussion relates to the giving, over plaintiff's objection, of instruction No. 5, which reads as follows:

"You are instructed, that if you find that the plaintiff failed to make such repairs on the premises as by the contract, he was bound to make, and that defendant was damaged by reason of plaintiff's failure to make such repairs, and if you further find that defendant had paid the $130 rents, you will find for the defendant on this item the difference between the rental value of the place without such repairs. Unless, you further believe from a preponderance of the evidence in this case that defendant agreed to repair said fence himself."

(1) This instruction was erroneous for the reason that it lays down the wrong measure of damages for breach of the lessor's covenant to make repairs. In *Varner* v. *Rice,* 39 Ark. 344, it was said: "If the landlord failed to repair the fences, according to his covenant contained in the written lease, the defendants may recoup as damages what it would have cost them to make such repairs, but not the indirect and consequential damages flowing from such failure to repair, such as the destruction of crops by the trespasses of cattle." The same rule has been announced in other decisions of this court. In-

struction No. 5 told the jury that the measure of damages would be "the difference between the rental value of the place without such repairs," meaning, we presume, the difference between the price paid by the plaintiff and the rental value of the place without the repairs. That statement is contrary to the decisions of this court, and calls for a reversal of the case.

(2) Error is assigned in the refusal of the court to give instruction No. 9, which reads as follows: "You are further instructed that if you find by a preponderance of the evidence, that plaintiff failed to repair the fence according to the covenants contained in the written contract, that the defendant could recover only the amount that it would cost to make such repairs, and this would not justify defendant permitting and allowing cattle and stock to damage said orchard." This instruction was correct in the statement as to measure of damages upon breach of the lessor's covenant to make repairs, but the latter part of the instruction was misleading in stating that the plaintiff's failure to make repairs "would not justify defendant permitting and allowing cattle and stock to damage said orchard." The jury might have understood from the instruction that the defendant was bound to make the repairs, and would be liable for any damages to the orchard on account of his failure to do so. The contract did not compel the defendant to make the repairs at all, and he could not be subjected to liability for damages caused by the plaintiff's own fault in breaking the contract. The contract in express terms required the lessee to take care of the premises, but it did not impose any obligation on him to make repairs. He had the right to take the premises as he found them and hold them without expending anything in the way of repairs. He had the right to make the repairs, however, and recoup the cost of same against the claim for rent, but he was not compelled to do so, and his failure to do it did not subject him to liability for damage to the orchard. The instruction was erroneous because it might have misled the jury, and the court was correct in refusing to give it.

(3)   Another of plaintiff's instructions refused by the court reads as follows: "10.   You are instructed, that before the defendant would be entitled to any damages by reason of the failure of the plaintiff to make repairs on said fence (if you find he failed to make said repairs as set out in the contract), you must find that defendant gave notice, and that plaintiff had a reasonable time and opportunity to make said repairs."

This instruction stated the law and it should have been given.   Plaintiff testified that he made all the repairs claimed to be necessary by the defendant, and he can not be held to have broken his contract unless he received notice that further repairs were necessary.   There was a conflict on that point, and the jury should have been instructed concerning it.   The defendant claimed that he notified the plaintiff, and that the latter promised when he received the last installment of rent to make the necessary repairs, but there was a conflict on that point.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.