PLATE GLASS UNDERWRITERS' MUTUAL INSURANCE COMPANY, Appellant, v. RIDGEWOOD REALTY COMPANY, Respondent.*

Kansas City Court of Appeals. February 9, 1925.

1. LANDLORD AND TENANT: Landlord Not Obligated to Repair Unless He Has Expressly Agreed So to Do. A landlord is not obligated or bound to repair unless he has expressly agreed to do so.

2. ———: Covenant That Lessor Will Repair is Never Implied. A covenant that the lessor will make repairs is never implied.

3. ———: Provision of Lease Held Not to Require Replacement of Plate Glass Window Blown Out by Windstorm. A provision in a lease that tenant should make all repairs other than those made necessary on account of damage by windstorm, did not obligate the landlord to repair a plate glass window blown out by windstorm, nor were such repairs, by the contract, laid upon the tenant.

4. ———: To Relieve Tenant from Payment of Rent, Premises Must be Permanently Unfit for Occupancy. Whereby statute a tenant is relieved from payment of rent in case premises are injured so as to be untenable, the injury contemplated is such as permanently unfits the premises for occupancy.

5. ———: Landlord Not Obligated to Repair Damage to Plate Glass Window Broken by Storm Where Damage Did Not Render Premises Unfit for Occupancy. Under provision of lease that if damages rendering premises unfit for occupancy can be repaired within four months, landlord will repair the same, landlord was only obligated to repair injury or damage thereto of such a serious nature as

would render the same "unfit for occupany," and where damage consisted of breaking of plate glass window, which did not render premises unfit for occupancy, landlord was not obligated to make repairs.

6. ———: To Render Landlord Liable for Repairs under Lease, He Must Have Notice of Damage and be Given Reasonable Time to Repair Same. Before landlord could be made liable for expense of making repairs as required by lease, he must have notice of the damage and be given a reasonable time to repair.

7. SUBROGATION: Plaintiff Claiming Right of Subrogation Had no Greater Rights Than One to Whose Rights Plaintiff is Subrogated. Plaintiff claiming right of subrogation, had no greater rights than the one to whose rights plaintiff is subrogated.

8. ———: Rights of Subrogation Grow Out of Natural Justice Demanded by Facts of the Situation. The origin or basis of subrogation is in the nature of things, that is, it grows out of natural justice demanded by the facts of the situation.

9. ———: One Secondarily Liable for Debt in Paying Same Becomes Subrogated to Creditor's Rights as Against Debtor Primarily Liable. Where one secondarily liable for a debt pays it, he is entitled as against the debtor, who is primarily liable, to be subrogated to creditor's rights, and such right of subrogation arises, by operation of law, with or without an agreement to that effect.

10. ———: Insurance: Insurer upon Payment of Damage to Tenant for Breakage of Plate Glass Window, Held Not Subrogated to Right of Tenant as Against Landlord Who Might Have Been Obligated to Repair Damage Under Terms of Lease. Insurance company insuring a tenant against loss by breakage of plate glass window becomes primarily liable to him for breakage thereof, as it insured the property itself and not the debt due tenant, and company by paying for repair thereof did not become subrogated to rights of tenant as against landlord, who under provision of lease has been obligated to repair damage.

*Corpus Juris-Cyc. References; Landlord and Tenant, 36 C. J., p. 125, n. 62; p. 126, n. 65; p. 147, n. 78; p. 149, n. 84; p. 157, n. 24; p. 331, n. 5. Plate Glass Insurance, 30 Cyc., p. 1643, n. 15. Subrogation, 37 Cyc., p. 366, n. 6; p. 371, n. 28, 32.

Appeal from the Circuit Court of Jackson County.— *Hon. Charles R. Pence,* Judge.

AFFIRMED.

*Ashley & Gilbert* for appellant.

*Hogsett & Boyle* and *Chester L. Smith* for respondent.

TRIMBLE, P. J.—Defendant is a corporation owning a large business building in Kansas City, which it had leased to the F. P. Burnap Stationery and Printing Company. Plaintiff is a plate glass insurance company in which the Printing Company had a policy insuring it against loss or damage, by breakage of plate glass covered by the policy, from accidental causes beyond insured's control.

While said policy was in force, a windstorm blew out the plate glass front of the ground floor of said building, and insured called upon plaintiff to replace it. The insurance company, within twenty-four hours after the glass was blown out, replaced it at a cost of $624.02, which is alleged to be, and which plaintiff's evidence shows was, reasonable.

The plaintiff did not know whether the Printing Company occupied the building as owner or tenant, and as the lease does not seem to have been recorded, it seems the insurance company had neither actual nor constructive notice of the terms of the lease.

After replacing the glass, the insurance company discovered that the insured was a tenant of defendant, holding under a five-year lease which provided, among other things, as follows:

"The lessee further agrees that . . . it will make all repairs which are required by lessor to be made during the term of this lease other than repairs necessary to be made on account of damage by fire, cyclone or windstorm, except that the lessor shall make all necessary repairs on the roof and shall keep the outside of the building painted."

The lease further provided that:

"In case said building shall at any time during the term of this lease be destroyed or damaged by fire or other unavoidable casualty so as to render the same unfit for occupancy or for carrying on the lessee's business, and such damage is of such an extent that the same cannot reasonably be restored or repaired within four months, then this lease shall terminate and the lessee shall yield up possession of the said premises and the lessee's obligation to pay any further rent shall cease. If, however, such loss or damage can reasonably be restored or repaired within four months, the lessor hereby agrees to rebuild said building or repair such damage as soon thereafter as the work can be done, and the rent hereby reserved or a fair and just proportion thereof according to the nature and extent of the damage sustained shall be suspended or ratably diminished as the case may be until the said premises have been rebuilt or made fit for use and occupancy."

Upon discovery of the lease with the above terms, the plaintiff brought this suit against the landlord to recover the amount it had expended in replacing the glass, on the theory that by the terms of the lease, the landlord was obligated therein to repair the damage above mentioned, and plaintiff had repaired it in ignorance of that fact, and was entitled to recover of the defendant landlord the expense thereof on the theory that plaintiff only agreed to *indemnify* the Printing Company against the loss or damage in question, and that by the terms of the lease such loss was primarily the loss of the landlord and should have been borne by it; and that the insurance company was subrogated to the rights of the insured, under a clause in the policy reading as follows:

"In case of replacement or payment for loss under this policy, the Company shall be subrogated to all the rights of the Assured against any person or corporation as respects such loss to the extent of its interest,

and the Assured shall execute all papers required to secure to the Company such rights."

After a trial, the court gave, among others, an instruction which in substance told the jury that if defendant was the owner of the building and leased it to the Printing Company, and that while the latter was occupying the building under the lease, the plate glass windows were broken out by a windstorm, and that said Printing Company held plaintiff's policy indemnifying it against such loss, and if, on demand of the Printing Company, plaintiff restored said glass at a cost of $624.02 and if said cost was reasonable, and if at the time plaintiff "was ignorant of the fact that under the terms of said lease said Burnap Stationery and Printing Company was not bound under the circumstances of said accident to replace said glass, and that plaintiff replaced same under the belief that it was legally bound to do so," their verdict should be for plaintiff in the sum of $624.02 with interest.

The jury returned a verdict for $691.10, and, upon defendant's filing a motion for new trial, the court sustained it, stating as a reason therefor that it was "on grounds of error in instructions." Whereupon plaintiff appealed.

The first and possibly most important question to be determined is, do the terms of the lease obligate or bind the landlord to make the repairs involved in this controversy? For, if the landlord is not bound to make them, then plaintiff is not entitled to recover, whatever might be its rights of subrogation where the landlord is bound.

It will be observed that the lease provides that the lessee agrees to "make all repairs which are required by lessor to be made during the term of this lease *other* than repairs necessary to be made on account of damage by fire, cyclone, or windstorm, *except* that lessor shall make all necessary repairs on the roof and shall keep the outside of the building painted."

Now, no matter if the above language may seem to *imply* that since lessee is not obligated to repair damage by windstorm the landlord is so obligated, yet, under the law of landlord and tenant, this, of itself, is not sufficient to bind the landlord to do so. For, under that law, a landlord is not obligated or bound to repair unless he has *expressly* agreed to do so, and the only express agreement on the landlord's part, in the above clause, is to repair the roof and keep the outside painted. [Kohnle v. Paxton, 268 Mo. 463; Glenn v. Hill, 210 Mo. 296; Piper, etc., Co. v. Dobbin, 195 Mo. App. 435, 437; 24 Cyc. 1081.] A covenant that the lessor will make any repairs is never implied. [Sheets v. Selden, 7 Wall. 416, 423; 24 Cyc. 1087.] The provision that the tenant should make all repairs other than those made necessary on account of windstorm, did not obligate the landlord to make those excepted, it merely relieved the tenant of any *contractual* obligation to make them. [Kennedy v. Watts, 142 Mo. App. 103, 106; 16 R. C. L. 1033; 1 Tiffany on L. & T. 581; Taylor on L. & T. 400; Healey v. Tyler, 150 Iowa, 169.] In other words, even though the tenant might, in fact, have to make such repairs if they were made by anyone, yet, so far as the above terms of the lease are concerned, the repairs here considered were not, *by the contract,* laid upon the tenant, nor was the landlord bound to make them.

Does the second provision hereinabove quoted bind the landlord to make the repairs involved herein?

It provides that if the building be damaged by fire or other unavoidable casualty "so as to render the same unfit for occupancy, or for carrying on the lessee's business" and is of such extent that it cannot be repaired in four months, then the lease shall terminate; but if such damage can reasonably be repaired within four months, the lessor agrees to rebuild said building or repair such damage as soon as it can be done the rent shall be suspended or ratably diminished, as the case may be, until the building has been rebuilt or made fit for use and occupancy. It would seem that the clause

"unfit for occupancy or for carrying on the lessee's business" and the phrase "fit for use and occupancy," both of which occur in the paragraph under consideration, are at least as strong in meaning as, if not synonymous with, "untenantable." It was held in Wolff v. Turner, 65 S. E. 41, that a building is "untenantable" when it is damaged so that it cannot be restored to a fit condition by ordinary repairs such as can be made without unreasonable interruption of the lessee's business. Where by statute a tenant is relieved from payment of rent, in case premises are injured so as to be untenantable, the injury contemplated is such as permanently unfits the premises for occupancy. [24 Cyc. 1158.] See, also, 2 Underwood on Land and Tenant, sec. 792, p. 1349, where the same rule is announced and where it is said that mere damage which renders the occupation of the tenant unpleasant and inconvenient, "is not sufficient to bring the case under the stipulation." [See, also, Lewis v. Hughes, 12 Colo. 208, 215.]

Consequently, it would seem that taking the whole paragraph into consideration, the repairs which lessor therein obligated itself to make are those correcting an injury or damage of such a serious nature as would render the building "unfit for occupancy or for carrying on the lessee's business" or unfit for "use and occupancy," and not such as could be repaired in a few hours' work with no substantial injury to, or cessation of, lessee's business. And indeed this is the construction placed upon the lease by the lessee in taking out the insurance instead of relying on the lessor to make such repairs. However, this is not a case between the two parties to the contract, and hence, perhaps, the plaintiff should not be conclusively bound by the construction the lessee places thereon, even though the rights plaintiff claims are based on contract with the lessee.

There was no evidence that the breaking of the glass rendered the building unfit for occupancy or for the carrying on the lessee's business; indeed, the evidence is the other way, for curtains were at once hung over the

broken windows and the only thing done to lessee's property was to remove the merchandise from them.

The only case cited by appellant in support of its contention is that of Darrell v. Tibbitts, 5 Queen's Bench Division, 560; But in that case the *lessees* were those who were bound to repair, and the court held that as the contract of insurance was one of *indemnity* and the insurance company had paid the loss unaware of the fact that lessees were bound to defendant to make good the loss and *had already done so,* the insurance company would be entitled to recover the money back, though the court, or at least one of the judges, remarks that if the tenants had not repaired the damage, the insurance company would have been bound to pay the landlord who had insured with them, and would have had a right to bring, in his name, an action against the tenants and recover what they had paid the landlord, on the theory of having been subrogated to his rights. The fact is, however, that in the case cited by appellant not only was there no question of the *tenant's* liability to make the repair but he had already done so, while in the case at bar the question is whether the *landlord* is obligated to make the repairs, a vastly different situation, because, in order to bind the landlord to make the repairs involved herein, that obligation must clearly and affirmatively appear, and we think it does not in the case at bar.

Certainly the landlord in the present suit was not bound to make them *unless* the damage was of such character as to render the building "unfit for occupancy or for carrying on of lessee's business." The evidence does not show this to be a fact but tends to show the contrary. The instruction hereinabove mentioned, however, proceeds on the theory or assumption that the landlord was bound as a matter of law. Consequently, the judgment of the court sustaining the motion for new trial could be affirmed on that ground.

But, even if the lease should be construed as obligating the landlord to make the repairs here in ques-

219 Mo. App.—13.

tion, still, before the landlord could, be made liable for the expense thereof, he must have notice of the damage and be given a reasonable time to repair. [16 R. C. L. 1052; 24 Cyc. 1091-4; Tiffany on Land. and Ten. 586; Ploen v. Staff, 9 Mo. App. 309; Schenk v. Forrester, 102 Mo. App. 124, 128; Chambers v. Lindsay, 171 Ala. 158; Rumberg v. Cutler, 86 Conn. 8.] No notice to the landlord was shown. And, even if a right of subrogation exists as claimed by plaintiff, still the latter could have no greater rights than the one to whose rights plaintiff is subrogated. [Hipwell v. National Surety Co., 130 Iowa, 656; Swats v. Siegel, 117 Fed. 13; Houston v. Br. Bank, 25 Ala. 250; Barton v. Brent, 117 Va. 385; Sellers v. Heinbaugh, 117 Penn St. 218.]

But we do not think any rights of subrogation exist in this case. Subrogation is a child of equity which in later-years has grown into and become a principle of law, but its origin or basis is in the nature of things, i.e., it grows out of natural justice demanded by the facts of the situation. For instance, if one *secondarily* liable for a debt pays it, he is entitled as against the debtor who is *primarily* liable to be subrogated to the creditor's rights, and such right of subrogation arises, by operation of law, out of that situation with or without an agreement to that effect. [Loewenstein v. Queen Ins. Co., 227 Mo. 100.] Now, the insurance company in the case at bar did not agree to insure or guarantee to the insured the payment of any *debt,* or the performance of any obligation on the part of insured's landlord. It merely agreed to insure the *plate glass,* i. e., the property itself, for a cash consideration, to-wit, the premiums paid by insured. The insurance contract was one solely between the two parties thereto, and the insurance company only paid what it contracted *primarily* to do; but now, notwithstanding it still retains the premiums or the benefit of its contract, it seeks reimbursement from the landlord on the basis that the latter, under a wholly separate and independent contract, should have done so. We see no basis of subrogation

arising out of the circumstances herein; and are of the opinion that the subrogation clause in the insurance contract only applies to circumstances in which the law creates the right of subrogation. The plaintiff insured the *property itself,* not a *debt* due the tenant. [Havens v. Germania Ins. Co., 135 Mo. 649, 658-9.] The mere fact that the tenant might thus have two sources to which he could look for repair or reimbursement does not give the plaintiff the right to be subrogated to that right as to one of such sources. [Ely v. Ely, 80 Ill. 532. See, also, Washington, etc., Co. v. Weymouth, etc., Ins. Co., 135 Mass. 503; Foley v. Manufacturers, etc., Ins. Co., 152 N. Y. 131; Heller v. Royal Ins. Co., 177 Pa. 262; Burton-Lingo Co. v. Patton, 107 Pac. 679; Milwaukee, etc., Ins. Co. v. Ramsay, 149 Pac. 542.]

The English case of Darrell v. Tibbitts, 5 Q. B. D. 560, cited by appellant and hereinabove referred to, if in point, would seem to be contrary to the general weight of authority and hence is not to be followed on the point in question.

The judgment is affirmed. All concur.