Max STOOL, Appellant,

v.

J. C. PENNEY COMPANY, Inc.,
Appellee.

No. 25853.

United States Court of Appeals
Fifth Circuit.

Nov. 18, 1968.

Edward P. Fahey, Groce, Hebdon, Fehey & Smith, San Antonio, Tex., for appellant.

F. W. Baker, San Antonio, Tex., for appellee.

Before GEWIN, PHILLIPS* and GOLDBERG, Circuit Judges.

GEWIN, Circuit Judge:

 This case presents the perennial quandary of the *Erie* syndrome, *viz.*, the application of state law which is vague and uncertain, if not nonexistent. A federal diversity court cannot decline to exercise its jurisdiction even though the state law which it is bound to apply cannot be found with certainty.[1] We therefore fall back on formulary surrogates to account for our mysterious application of an uncoined code. Thus where the controlling state law eludes the researcher, the court must attempt to ascertain the policy inclination of the state's highest tribunal with regard to the matter in controversy. Failing that, the court may assume that the state courts would adopt the rule which, in its view, is supported by the thrust of logic and authority.[2]

 It is nevertheless patent that any rule which we vicariously adopt on behalf of the state courts will be substantially the product of conjecture. Accordingly, we are hesitant to attempt to second-guess the district court which has already ventured intrepidly into the phantom-law wonderland. Since our view of the state law is probably as much a guess as the district court's,[3] the latter cannot be designated categorically as wrong. Ironically enough, however, the district court can be erroneous. We cannot accept the premise that one guess is as good as another, for that would effectively eliminate appellate review in a substantial portion of the cases which come before this court. When a federal court of appeals is of the opinion, as we are in this case, that the district court's view of the applicable state law is against the more cogent reasoning of the best and most widespread authority, it must reverse the judgment of the lower court.

## I

The controversy which brings this case here for review concerns the construction to be placed upon the interdependent repair and indemnity provisions of a lease. The pertinent parts of the two clauses provide:

That the Landlord shall be responsible for and keep all parts of the demised premises . . . in good, safe, tenantable condition, sightly in appearance,

---

* Judge Harry Phillips of the Sixth Circuit, sitting by designation.

1. See Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); Boston Ins. Co. v. Gable, 352 F.2d 368, 370 (5th Cir. 1965).

2. See Jackson v. Sam Finley, Inc., 366 F.2d 148, 153 (5th Cir. 1966); Putnam v. Erie City Mfg. Co., 338 F.2d 911, 917–918 (5th Cir. 1964).

3. We should point out that a least one Texas Supreme Court dictum supports this court's view of the state law, note 6 infra, while there is neither law nor dictum to the contrary. To this extent, if no further, our assessment of the applicable state law is less conjectural than that of the district court. We think it appropriate, however, to rest our decision upon a broader basis in order to repulse any suggestion that we have seized upon a furtive dictum to justify our conclusion.

and in good order and repair. Landlord shall be liable for any damages sustained by Tenant resulting from the failure of Landlord to make any of said repairs, and Landlord hereby agrees to hold the Tenant harmless against all claims, damages, or causes of action for damages, arising out of, or brought on account of, injury to person or persons or property, or loss of life, resulting from the failure of Landlord to make any of said repairs.

The appellant-landlord contends that a notice requirement must, as a matter of law, be read into the repair clause and that the indemnity provision did not come into effect in this case because notice was not given. The appellee-tenant argues that notice should not be implied as a condition precedent to the landlord's duty to make repairs and that the indemnity clause is absolute and unconditional. On motions by both parties for summary judgment, the district court resolved the dispute in favor of the appellee, holding that the appellant had agreed to indemnify his tenant for damages caused by a condition of disrepair even though the appellant was unaware of the defect.

Generally the facts out of which this controversy arose are undisputed. The appellee conducts a business commonly known as a department store in the building which it rents from the appellant. While the lease was in effect, an invitee of the appellee was injured when she tripped on a defective portion of linoleum floor-covering and tumbled down a stairway. The appellee had not notified the appellant that the linoleum was in a state of disrepair and it does not appear from the record before this court that the appellant had acquired knowledge of the defect from any other source.

The injured invitee brought suit against the appellee who demanded that the appellant defend the suit and indemnify it for any damage recovery, both of which the appellant declined to do. A judgment against the appellee was recovered by the injured party, who then agreed to settle the claim for slightly less than the amount of the judgment. The appellee thereafter brought suit for indemnity against the appellant in the district court, claiming the amount of the settlement plus an additional sum for expenses incurred.

## II

The repair and indemnity clauses involved here are manifestly interdependent. The indemnity provision comes into effect only when the duty imposed by the repair clause is breached. Thus the problem presented is to ascertain the extent of the duty imposed by the repair clause. More specifically, the issue is whether the duty to repair should be conditioned upon notice or knowledge that repair is needed. If notice or knowledge is a legally implicit condition precedent, then appellee has no right to be indemnified because it did not notify the appellant of the defect and it is not shown that appellant had knowledge of it.

Careful research has disclosed no relevant case interpreting a repair clause in an indemnity context like the one involved here. There are, however, numerous tort cases construing virtually identical repair clauses and the appellant rests his position upon those cases. Professor Corbin states the rules as follows:

> If the part of the premies to be kept in repair is in the legal possession of the landlord or if he has reserved the legal privilege of entry, so that at all reasonable times he may investigate for himself to discover leaks in the roof or stoppages in a pipe, it should usually be held that notice to the landlord by the tenant is not a condition precedent to the landlord's duty. In such a case the sources of information of the two parties are substantially equivalent. If, on the other hand, the landlord is not in legal possession and has not reserved the privilege of entry for examination, it should usually be held that notice is a condition precedent.[4]

The cases throughout the country are almost unanimous in holding that, in the absence of control, either notice or knowl-

---

4. 3A Corbin, Contracts § 725, at 391–92 (1960).

edge of a defect is necessary before the duty to repair arises unless the lease expressly provides that notice is not required.[5] Indeed, in Harvey v. Seale the Texas Supreme Court in an oblique dictum recognized the rule.[6] The thrust of the court's dictum is enhanced somewhat by the express adoption in *Harvey*[7] of section 357 of the Restatement (Second) of Torts,[8] a comment to which states:

> Since the duty [to repair] arises out of the existence of the contract to repair, the contract defines the extent of the duty. Unless it provides that the lessor shall inspect the land to ascertain the need of repairs, a contract to keep the premises in safe condition subjects the lessor to liability only if he does not exercise reasonable care after he has had notice of the need of repairs. In any case his obligation is only one of reasonable care.[9]

The appellee suggests in his brief that these authorities are "not entirely in point" because they construe the repair provision in a tort rather than an indemnity context. We fail to see any reason why the meaning of a lease provision should vary depending upon the legal theory relied upon by one of the parties. The rationale of the rule requiring notice is applicable in either case. The party who is in possession and control of the property is in the best position to know whether repairs are needed. The nonpossessing party cannot be expected to intuit the need for repairs; it is perfectly obvious that he must acquire knowledge of the defect before he can repair it. The possessing party not only will be the first to learn of the defect but will also be able to take temporary safety precautions until the repairs can be made. The nonpossessing party, on the other

5. See e. g., Chambers v. Lindsey, 171 Ala. 158, 55 So. 150, 152 (1911); Bowling v. Carroll, 122 Ark. 23, 182 S.W. 514, 515 (1916); Sieber v. Blanc, 76 Cal. 173, 18 P. 260, 261 (1888); Rumberg v. Cutler, 86 Conn. 8, 84 A. 107, 108 (1912); Richards v. Dodge, 150 So.2d 477, 484 (Fla.Ct.App.1963); Valdes Hotel Co. v. Farrell, 17 Ga.App. 93, 86 S.E. 333, 335 (1915); Woodbury Co. v. William Tackaberry Co., 166 Iowa 642, 148 N.W. 639, 642 (1914); Ensminger v. Great A. & P. Tea Co., 134 So.2d 686, 691 (La.Ct.App.1961) (quoting La.Stat. tit. 9, § 3221 (1950)); Fiorntino v. Mason, 233 Mass. 451, 124 N.E. 283 (1919); Thompson v. Clemens, 96 Md. 196, 53 A. 919, 922, 60 L.R.A. 580 (1903); Plate Glass Underwriters' Mut. Ins. Co. v. Ridgewood Realty Co., 219 Mo.App. 186, 269 S.W. 659, 661 (1925); Brewington v. Loughran, 183 N.C. 558, 112 S.E. 257, 28 A.L.R. 1543 (1922); Lommori v. Milner Hotels, Inc., 63 N.M. 342, 319 P.2d 949, 954 (1957); Thomas v. Kingsland, 108 N.Y. 616, 14 N.E. 807, 808 (1888); Asheim v. Fahey, 170 Or. 330, 133 P.2d 246, 247, 145 A.L.R. 861 (1943); Glassman v. Martin, 196 Tenn. 595, 269 S.W.2d 908 (1954); Prosser, Law of Torts § 80, at 474–76 (1955); 32 Am.Jur. Landlord and Tenant § 710, at 587–88 (1959).

6. The Court there stated:
 > In recent years an increasing number of courts have held that tort liability may be predicated upon the lessor's negligent failure to perform his covenant to repair *after notice of a defect* which renders use of the property in the manner contemplated by the lease unreasonably dangerous. . . . The latter view has been adopted by the Restatement and is now recognized as the law in Texas.
 362 S.W.2d 310, 312 (Tex.1962) (emphasis added).

7. 362 S.W.2d at 312. See Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 618, 23 A.L.R.2d 1114 (1950).

8. Restatement (Second) of Torts § 357 (1965) provides:
 > A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if
 > (a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and
 > (b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and
 > (c) the lessor fails to exercise reasonable care to perform his contract.

9. Restatement (Second) of Torts, Reporter's Notes § 357, comment *d* at 342–43 (1965).

hand, would have to maintain a watchman on the premises in order to safeguard invitees from defects between the time of their discovery and the time when repairs could be made. This would be an erratic and economically wasteful solution to a basically simple problem.

■■ There is no question that the parties to a lease are free to make their own agreement, even a seemingly harsh one, within the bounds of law and public policy.[10] However, the courts will not construe a contract to mean that the parties have agreed to act contrary to what common sense and the circumstances obviously demand, unless the contract is explicit and clear in that meaning. Since the appellant certainly did not have possession or control of the leased premises in this case,[11] the sensible procedure for effecting repairs was for the appellee or its agent to notify the appellant of the need.

■ Indeed, the parties' own actions confirm that they regarded notice as a condition precedent to the duty to repair.[12] The appellee's general manager stated that the ordinary procedure for getting repair service was to contact the appellant's son or his agent orally. The manager stated that the store employees knew that they were supposed to notify appellant when a defect was discovered. Moreover, the only regular inspection of the premises was made by the appellee's liability insurer. The appellant neither inspected nor had a legal right to inspect the leased property.[13]

■■ In Lone Star Gas Co. v. X-Ray Gas Co., the Supreme Court of Texas stated:

> The practical construction placed upon a contract by the parties themselves constitutes the highest evidence of their intention that whatever was done by them in the performance of the contract was done under its terms as they understood and intended same should be done.[14]

When the actions of the parties are viewed in the context of the reasonable and practical interpretation of the repair clause involved here, the conclusion is inescapable that the duty to repair was conditioned upon the appellant's receiving notice or knowledge of the defect in the premises. We think that the district court was erroneous in holding otherwise. It follows that the appellee is not entitled as a matter of law to be held harmless

---

10. Reef v. Mills Novelty Co., 126 Tex. 380, 89 S.W.2d 210, 211 (1936); 13 Tex.Jur. 2d Contracts § 1, at 108–09 (1960). See Ohio Oil Co. v. Smith, 365 S.W.2d 621 (Tex.1963) (contract construed to mean that indemnitor agreed to hold indemnitee harmless even against the latter's own negligence).

11. Goodman v. Republic Investment Co., 215 S.W. 466, 469 (Tex.Ct.Civ.App.1919). The court in *Goodman* held that a landlord's entry upon the demised property constitutes control only when it is hostile and inconsistent with the tenant's possession.
 We should observe that it is possible that a further development of the facts might show that the appellant was in control of the store building or at least some part of it. But the evidentiary record now before this court—*viz.*, the stipulations of the parties and two depositions—does not show that the appellant had any more control of the premises than any other member of the public who might enter the store.

12. The district court's assertion that the parties' actions corroborate its conclusion that notice or knowledge was not required is completely unsupported by the depositions and is clearly erroneous.

13. In Higby v. Kirksey, 163 S.W. 315, 316 (Tex.Ct.Civ.App.1914), the court stated:
 In the absence of a provision so allowing in the contract of lease, and of a consent by the tenant, the landlord has no right of entry upon the leased premises even to make needed repairs. See Barnett v. State, 76 Tex.Cr.R. 555, 176 S.W. 580, 586 (1915) (dictum); 35 Tex.Jur.2d Landlord and Tenant § 62, at 549–50 (1962). Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1951), certainly does not undermine the *Higby* rule. The *Renfro* case merely indicates that the duty to repair is not inconsistent with the right of possession.

14. 139 Tex. 546, 164 S.W.2d 504, 508 (1942). See James Stewart Co. v. Law, 149 Tex. 392, 233 S.W.2d 558, 561, 22 A.L.R.2d 639 (1950).

from liability to the injured invitee. Since notice was never given and since it was not shown that the appellant knew of the defective condition, the duty to repair never arose and the indemnity clause, therefore, remained dormant and inapplicable.

### III

In support of its contention that the repair clause imposed an absolute duty unconditioned by a notice requirement, the appellee cites a number of cases from jurisdictions other than Texas. Two theories emerge from several of those cases,[15] one theory stated best in Sanderson v. Berkshire-Hathaway, Inc.[16] and the other stated in Schenk v. Forrester.[17] Both of these cases held that the landlord had agreed to maintain the premises without regard to notice of defects. In *Sanderson* the Second Circuit applied a purported Vermont rule which distinguishes between a covenant to repair and a covenant to maintain the premises in a safe condition for occupancy. When the latter language is used, the landlord is deemed to have retained possession of the premises and notice is not a condition precedent to the duty to repair. The appellee invokes this rule, pointing to the language in the repair clause "[t]hat the Landlord shall be responsible for and keep all parts of the demised premises . . . in good, safe, tenantable condition . . .."

However, the difficulty with the appellee's position and with the *Sanderson* theory is that the court is required to indulge in a pure fiction.[18] The court there makes clear that the rule it applied was grounded upon the assumption that the landlord was in control of the premises for the purpose of making repairs. It is clear that the appellant here was not in control of the demised premises for any purpose whatever, and we decline to assume the contrary in the absence of controlling state law to that effect. We are not coyly pretending that the courts have not at times indulged in legal fictions. But a fiction is generally employed by a court in the interest of justice and equity to bridge a legal void. The equities in the present case do not compel us to resort to fiction; quite the contrary, the equities demand that the case be ruled by the crisp impact of the real facts.

In the *Schenk* case, the tenant had rented the premises upon the oral promise of the landlord that the pasture fence would restrain cattle, which in fact it would not do. The case turned upon the finding of an oral warranty that the fence was secure for the tenant's purposes. The Missouri Court of Appeals made clear that, in the absence of such a warranty, notice of the defect would have been required. Since the repair clause in the case *sub judice* does not warrant any particular condition but

---

15. The appellee cites many cases which are unhelpful to its cause. See Pyburn v. Fourseam Coal Co., 303 Ky. 443, 197 S.W.2d 921 (1946); Chelefou v. Springfield Institute for Sav., 297 Mass. 236, 8 N.E.2d 769 (1937); Fiorntino v. Mason, 233 Mass. 451, 124 N.E. 283 (1919); Plate Glass Underwriters' Mut Ins. Co. v. Ridgewood Realty Co., 219 Mo.App. 186, 269 S.W. 659 (1925); Brewington v. Loughran, 183 N.C. 558, 112 S.E. 257, 28 A.L.R. 1543 (1922).

The Kentucky Court of Appeals in *Pyburn* merely held that, if the landlord has knowledge of a defect, he will be held liable for injuries due to his failure to repair the defect. In *Chelefou*, the Massachusetts Supreme Court held that

the defect must exist at the time of letting and that the landlord must know of it before liability can attach. The same court in *Fiorntino* held that the landlord could agree to perform repairs without notice but the agreement must be explicit. The other cases cited by the appellee support the appellant's position rather than its own.

16. 245 F.2d 931 (2d Cir. 1957). The theory in *Sanderson* is also stated in Miles v. Janvrin, 196 Mass. 431, 82 N.E. 708, 13 L.R.A.,N.S., 378 (1907).

17. 102 Mo.App. 124, 77 S.W. 332 (1903).

18. See Prosser, Law of Torts § 80, at 474–75 (1955).

merely agrees to repair the premises when a condition of disrepair exists, the appellee's reliance upon *Schenk* is patently misplaced.

## IV

■ The appellee further contends that, even if we decide that the appellant's duty to repair was not absolute, it is nevertheless entitled either to be completely indemnified by the appellant under common law indemnity or to be relieved of half of its liability under the Texas statute providing for contribution among joint tort-feasors.[19] As we view the Texas law, the appellee is entitled to neither indemnity nor contribution.

The appellee argues that the controlling case of Renfro Drug Co. v. Lewis[20] establishes its right to indemnity. Analysis of that decision, however, shows the vapidity of the argument. In *Renfro* the landlord-bank leased part of its building to the druggist on whose premises the plaintiff was injured. A provision in the lease between the bank and the lessee-druggist required the latter to keep open a passageway from the parking area to the main part of the building. The court stated:

In other words, the passageway . . . [where the accident occurred] was one reserved by Bank as landlord for the common use and benefit of all of its tenants in the various parts of the building. Under these circumstances Bank was under a duty to those, without prior notice of defects, entering as business guests or invitees of the tenants to use ordinary care to keep the entrance to the passageway in a reasonably safe condition for their use. . . . The basis for the rule imposing a duty of ordinary care on the landlord in such circumstances is two-fold: that the control of entrances, halls, stairways, etc. reserved for use in common by two or more tenants of a building is retained in the landlord, and that those using such entrances, halls, stairways, etc. as invitees of the tenants are impliedly invited to do so by the landlord.[21]

Turning to the indemnity question, the court quoted the applicable rule from Wheeler v. Glazer as follows:

Where the injury forming the basis for the judgment against the joint tort-feasors results from a violation of a duty which one of the tort-feasors owes to the other, the latter, at common law, is entitled to contribution or indemnity from the former.[22]

The court then observed that, since the lessor-bank had agreed in the lease to keep the passageway in proper repair, the lessor owed the lessee a duty which it had breached in not properly maintain-

---

19. Vernon's Ann.Tex.Stat. art. 2212 (1963) provides:

Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment. If any of said persons co-defendant be insolvent, then recovery may be had in proportion as such defendant or defend-

ants are not insolvent; and the right of recovery over against such insolvent defendant or defendants in judgment shall exist in favor of each defendant in judgment in proportion as he has been caused to pay by reason of such insolvency.

20. 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R. 1114 (1951). The other cases cited by the appellee add nothing to the principles developed in *Renfro*. See Humble Oil & Refining Co. v. Martin, 148 Tex. 175, 222 S.W.2d 995 (1949); Austin Road Co. v. Pope, 147 Tex. 430, 216 S.W.2d 563 (1949).

21. 235 S.W.2d at 618.

22. 137 Tex. 341, 153 S.W.2d 449, 452, 140 A.L.R. 1301 (1941).

ing the passageway over which it had "reserved at least joint control" with the lessee. Accordingly, the lessee was entitled to be indemnified by the lessor.

There are two cogent reasons why the appellee can take no comfort from the *Renfro* decision. The rule articulated there requires (1) that the lessor owe a duty to the lessee and (2) that the lessor be in control of at least a part of the demised property. As we have already determined, on the record before this court, the appellant owed the appellee no duty and the appellant was not in possession or control of any part of the premises.

Moreover, for these same two reasons, it is clear that the appellee is not entitled to contribution. The appellant and the appellee were obviously not joint tortfeasors; thus the Texas contribution statute is inapplicable by its terms.

## V

The appellant contends in a supplementary letter to the court that he is entitled to summary judgment under a recent Texas case which construes another provision of the lease involved here.[23] However, we are not inclined to consider this contention because the district court has not ruled upon the question and because we have decided that the case must be remanded for further factual and legal determinations. The appellant will have ample opportunity to present and develop both his theories and his facts in the district court.[24]

The district court erred in granting the appellee's motion for summary judgment. The rule is that summary judgment may only be granted where there is no material factual dispute and the movant is entitled to relief as a matter of law.[25] Since both parties moved for summary judgment in this case, our reversal of the judgment for one party would ordinarily require that judgment be rendered for the other. However, our determination of the applicable law has created at least one factual question. We hold in this case that a covenant to repair does not impose a duty to repair until the covenantor has received either notice or knowledge of the condition of disrepair. While there is no dispute here that the appellee did not give the appellant notice of the defect, there has been no determination whether the appellee acquired knowledge of the defect in some other way. Additionally, other factual disputes may appear upon a recasting of the issues in the lower court. Accordingly, the judgment is reversed and the case is remanded to the district court for further proceedings.

Reversed and remanded.

23. McCrory Corp. v. Nacol, 428 S.W.2d 414 (Tex.Ct.App.1968).

24. The appellee argues in his brief that this new question could not be raised because of a controlling stipulation by the parties in the pre-trial order. However, the district court appears to have partially released the parties from their stipulations in permitting the appellee to amend its complaint to allege additional facts. Consequently, this may be an appropriate case for a recasting of the legal and factual issues for trial. Logan Lumber Co. v. Commissioner, 365 F.2d 846, 855 (5th Cir. 1966); Laird v. Air Carrier Engine Serv., Inc., 263 F.2d 948 (5th Cir. 1959).

25. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).