**W. R. GUSTAFSON, a/k/a Roy Gustafson, and Janet Gustafson, Appellees,**

v.

**CENTRAL IOWA MUTUAL INSURANCE ASSOCIATION, Appellant.**

**Donald STOLTE, Appellee,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Appellant.**

**Nos. 62181, 62182.**

Supreme Court of Iowa.

April 25, 1979.

Rehearing Denied May 24, 1979.

Joseph R. Cahill of Nelson, Cahill & Cahill, Nevada, for appellants.

Kirk C. Quinn and L. W. Courter of Doran, Doran, Courter and Quinn, Boone, for appellees.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McGIVERIN and LARSON, JJ.

McGIVERIN, Justice.

We are presented with the question whether insureds may recover on their farm building insurance policies for windstorm damage when the buildings have been replaced without charge under a builder's warranty. Defendant insurance companies appeal from trial court judgments awarding recovery to plaintiff insureds. Defendants had refused to pay the insurance proceeds to plaintiffs and claimed the insureds, in effect, had suffered no losses recoverable under the policies. We affirm the trial court.

These consolidated appeals present identical legal issues concerning recoverability of insurance proceeds, although the specific terms of the respective policies differ.

All plaintiffs operate farms in Boone County. Plaintiffs W. R. Gustafson and Janet Gustafson are insureds under a policy issued by defendant Central Iowa Mutual Insurance Association covering fire, wind damage and other perils. Plaintiff Donald Stolte has a similar policy issued by defendant State Farm Fire and Casualty Company. Both policies, on which premiums were fully paid, were in force covering plaintiffs' farm buildings at the times in question.

In 1973 plaintiffs purchased three steel buildings from Morton Buildings, Inc., which installed the buildings on plaintiffs' farms. Gustafson bought a machine shed and a hog shed. Stolte obtained an implement shed.

Morton delivered express warranties on the buildings that it would, for five years, replace or repair free of charge the buildings or their components "if directly damaged by snow or wind."

By a change in coverage endorsement referring to the buildings as "Morton Buildings," Gustafsons purchased $7,500 insurance on the machine shed and $6,000 on the hog house.

Stolte's policy specifically insured his steel implement shed for $9,000.

Neither insurer had advised its respective insured that coverage would be denied for damage repaired or replaced under the Morton warranty.

On June 13, 1976 a tornado swept through Boone County, passing over plaintiffs' farms and totally destroying the Morton buildings as well as other insured buildings.

Morton replaced the three steel buildings at its expense under the warranties.

Gustafsons and Stolte notified their insurance companies. Proper measures were taken to report the losses and demand settlement. The companies paid plaintiffs for damage to buildings other than the Morton Buildings. When defendant companies refused payment as to the Morton steel buildings, plaintiffs commenced separate actions against their insurers for breach of the insurance contracts.

Both cases were tried on stipulations of fact. The trial court entered judgments for Gustafsons in the amount of $13,500 against Central Iowa and for Stolte in the amount of $9,000 against State Farm.

The insurance companies appeal, raising two main issues for our review:

(1) Whether a loss occurred to the insureds when the wind destroyed insured farm buildings were replaced without charge under a builder's warranty; and

(2) Whether the builder's warranty constituted "other insurance" within the meaning of the insurance policies which disclaimed liability for any losses covered by other insurance.

The scope of our review is for correction of errors at law. Rule 4, Iowa R.App.P.

I. *Direct loss.* We must first decide whether the insureds are barred from recovering insurance proceeds on the destroyed buildings because they benefited from collateral recovery under the Morton

builder's warranty and, therefore, suffered no loss.

In the Central Iowa policy, the Association stated it:

> does *indemnify the insured named herein* . . . to the extent of the actual cash value of the property at the time of the loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss . . . against all DIRECT LOSS BY FIRE, LIGHTNING, WINDSTORM, CYCLONE, TORNADO, EXTENDED COVERAGE, HAIL AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY.

(Emphasis added.)

The State Farm policy had similar language, except that the policy stated the company "insured" rather than indemnified the policy holder.

Defendants contend no actual loss occurred to the insureds. Arguing that the cornerstone of property insurance law is the principle of indemnity, defendants key on the word "indemnify" and the limitation on the loss to be paid under the language emphasized in the above quotation from the policies. Defendants argue that if the repair or replacement policy language is to be given effect, the question in issue is not the amount of "loss" sustained by the insureds, but, rather, the cost to the insureds to repair or replace the structures. When this repair or replacement cost is less than the "loss sustained," then, by the terms of the policy itself, the cost establishes the maximum amount the insurance company is required to pay.

Defendants, understandably, deemphasize the words "direct loss" in the policy. That term was defined adversely to them in *Kintzel v. Wheatland Mutual Insurance Association*, 203 N.W.2d 799, 808 (Iowa 1973).

In *Kintzel* we defined "direct loss by windstorm" to mean "damage due to the strength or force of the wind." Direct loss "does not indicate an immediate impact on the contents of claimant's wallet." *Id.* at

808. We further said, "[o]bviously, the time of 'loss' as that term is used in the policy, refers to the date of casualty." Additionally we stated:

> It follows the "loss" we are concerned with here should be defined and measured as of the date of the damage-causing windstorm.

*Id.* at 810.

Defendants admit, and we agree, that their insureds sustained a "direct loss" as that term has been defined in *Kintzel*. Our language in *Kintzel* rejected a rationale that would require us to measure the presence or absence of loss not at the time of the windstorm but at some future unspecified date. *Id.* at 810. Applying *Kintzel*, the amount of the "direct loss" must be tied to the date of the windstorm and not to some speculative future date on which the warrantor may honor the terms of his warranty to repair or replace the building.

This construction avoids hardship on the insured which might result if the assessment of loss were postponed. Had a dispute arisen as to whether Morton was liable under the warranty to replace the destroyed buildings, the insureds would have remained uncompensated for the destruction of the buildings while waiting on the outcome of the warranty dispute. A more reasonable interpretation of the policies is that the losses to the insureds in the present cases must be assessed at the date of the windstorm and not after Morton had replaced the buildings.

Our definition of direct loss in *Kintzel*, 203 N.W.2d at 808–11, resulted from our preference for the New York rule. Our resolution of defendants' contention that plaintiffs sustained no loss for which defendants must indemnify the insureds turns on whether we continue to adhere to the New York, or majority rule, which would permit recovery by these insureds, or the Wisconsin or minority rule, which would deny recovery.

Although the *Kintzel* language concerning "direct loss" is controlling, *Kintzel* did not factually face the problem of double

recovery. Because of the difference between *Kintzel* and the facts of our present case, we find it helpful to review the majority and minority positions before deciding the first issue before us.

The origin of the New York Rule on loss lies in *Foley v. Manufacturers' Builders' Fire Insurance,* 152 N.Y. 131, 46 N.E. 318 (1897). Under *Foley* a property owner contracted with a contractor to construct houses and complete them within a specified time. Payment was due within ten days *after* completion. The owner took out fire insurance. Subsequently, fire destroyed the partially completed buildings. It was undisputed that the contractor was bound to rebuild the structures at no cost to the owner.

When the owner attempted to collect the fire insurance proceeds, the insurance company asserted that the owner had no interest to protect and suffered no loss. The *Foley* court, however, ruled that:

> the contract relations between the plaintiffs and the contractors is a matter in which the defendant has no concern. When the policy was issued, it could not be known whether the contractors would perform their contract. If they abandoned it, the owners would derive such advantage as would accrue from the partial construction of the buildings prior to such abandonment.

In addressing the issue of possible double recovery, the court said "however this may be, the owners had an insurable interest to the whole value of the buildings on their land; and the defendants can neither compel the plaintiffs to put the loss on the contractors, nor can they resort to the terms of the building contract to diminish the liability for an actual loss within the terms of the policy." 46 N.E. at 319.

The *Foley* decision was subsequently followed in *Alexandra Restaurant, Inc. v. New Hampshire Insurance Co.,* 272 App.Div. 346, 71 N.Y.S.2d 515, *aff'd* 297 N.Y. 858, 79 N.E.2d 268 (1948). In *Alexandra* the lessee of a restaurant was insured against fire loss of structural improvements. Under terms of the lease, however, the lessor was obli-

gated to repair such damage. While the policy was in force a fire occurred, without fault of either the lessee or lessor, and damaged structural improvements in the amount of $3,954.89. The lessor-landlord repaired the damage with proceeds from his *own* insurance in accordance with the lease. The lessee submitted a claim of loss to his insurance company. 71 N.Y.S.2d at 516–17. In response to the insurance company's claim that the lessee was precluded from recovery since the restaurant had been fully restored, the court said "it is difficult to see why . . . the ultimate loss should fall upon the landlord while the insurance company though accepting and retaining its premium for the precise coverage of loss that occurred, should have no liability or obligation whatever." 71 N.Y.S.2d at 522. *See Kintzel,* 203 N.W.2d at 808.

Many jurisdictions have found the *Foley-Alexandra* reasoning sound. *Compare* these decisions *with DeBellis Enterprises, Inc. v. Lumbermens' Mutual Casualty Co.,* 77 N.J. 428, 390 A.2d 1171 (1978) (fire insurer's liability not relieved by redemption of property from insured tax sale purchaser) and *and Montgomery v. First National Bank,* 265 Or. 55, 508 P.2d 428 (1973) (fire insurer's liability not relieved by owner repair of secured, insured party's property) *and Aetna Casualty and Surety Co. v. Cameron Clay Products, Inc.,* 151 W.Va. 269, 151 S.E.2d 305 (1966) (fire insurer's liability not relieved by existence of executory contract to convey upon buyer's performance of conditions precedent) *and Rutherford v. Pearl Assurance Co.,* 164 So.2d 213 (Fla.App.1964) (fire insurer's liability not relieved by secured sale of property by insured) *and Koppinger v. Implement Dealers Mutual Insurance Co.,* 122 N.W.2d 134 (N.D.1963) (fire insurer's liability not relieved by secured sale of property by insured) *and Hughes v. Potomac Insurance Co.,* 199 Cal.App.2d 239, 18 Cal.Rptr. 650 (1962) (flood insurer's liability not relieved by flood control district's repair of damaged home) *and Board of Trustees v. Cream City Mutual Insurance Co.,* 255 Minn. 347, 96 N.W.2d 690 (1959) (fire insurer's liability not relieved by se-

cured sale of property by insured) *and New England Gas and Electric Association v. Ocean Accident and Guarantee Corp.,* 330 Mass. 640, 116 N.E.2d 671 (1953) (property insurer's liability not relieved by free replacement of damaged machine) *and Heidisch v. Globe and Republic Insurance Co.,* 368 Pa. 602, 84 A.2d 566 (1951) (fire insurer's liability not relieved by condemnation under eminent domain where title had not yet passed) *and Plate Glass Underwriters' Mutual Insurance Co. v. Ridgewood Realty Co.,* 219 Mo.App. 186, 269 S.W. 659 (1925) (plate glass insurer's liability not relieved by landlord's obligation to make repairs.)

The opposing view on loss is called the Wisconsin Rule and is drawn from *Ramsdell v. Insurance Co. of North America,* 197 Wis. 136, 221 N.W. 654 (1928). Under the *Ramsdell* facts two property owners, each possessing a separate interest as lessors of the same building, bought separate fire insurance policies. After fire destroyed the building, the lessee made full restoration. When the lessors attempted to collect insurance proceeds, the Wisconsin court held that the lessors had not suffered any actual loss. In reaching this conclusion the court stated it must look "to the substance of the whole transaction rather than to seek a metaphysical hypothesis upon which to justify a loss that is no loss." 221 N.W. at 655.

Other courts which have followed the Wisconsin rule include *Paramount Fire Insurance Co. v. Aetna Casualty and Surety Co.,* 163 Tex. 250, 353 S.W.2d 841 (1962); *Glens Falls Insurance Co. v. Sterling,* 219 Md. 217, 148 A.2d 453 (1959); *and Beman v. Springfield Fire and Marine Insurance Co.,* 303 Ill.App. 554, 25 N.E.2d 603 (1940).

Even prior to *Kintzel,* existing Iowa law suggested applicability of the New York Rule. The Eighth Circuit applied the majority New York Rule in *Citizens Insurance Co. v. Foxbilt, Inc.,* 226 F.2d 641 (8th Cir. 1955). In *Foxbilt* the factual situation of *Alexandra* was substantially paralleled when the lessee obtained fire insurance on improvements to leased property. The *Foxbilt* lessor, like the *Alexandra* lessor, was obligated under the lease to repair

structural damage. When a fire destroyed the insured improvement, the insurance company refused to make payment. Restoration was completed by the lessor, at the lessor's expense, pursuant to the terms of the lease.

Since the case was removed from Iowa district court to federal district court, the federal court attempted to apply Iowa law to this undecided Iowa issue. Ultimately the court relied on *Alexandra* to affirm recovery against the insurance company and reasoned:

The measure of damages under Iowa law, in the event of loss, is ordinarily the difference between the fair market value of the insured property immediately before the fire and its fair market value immediately thereafter, not exceeding the face amount of the policy nor the cost of repair and replacement.

Since the liability of the insurer is for indemnity against loss to property and attaches on the happening of the loss and since the amount of the liability is determinable as of that time, it reasonably can be argued that the subsequent repair or restoration of the insured property by a third party without cost to the insured cannot relieve the insurer of its accrued liability. This is the law in some of the states.

(Citation omitted.) *Id.* at 644.

We believe, as did the district court, that the essential question in resolving these cases is who shall receive the benefit of the Morton Buildings warranty. Because we agree with the rationale of the New York Rule, that an insurance company accepting and retaining premiums for the coverage of loss that occurred should not be relieved of liability on the basis of the contractual relations between the claimant and third parties, and we decline to alter our stance in *Kintzel,* that determination of loss should not be postponed to some future unspecified date, we decide Gustafsons and Stolte are entitled to claim the benefits of both the Morton warranty and the respective insurance proceeds.

Our adoption of the New York Rule, however, does not dispose of all impediments to the claimants' recovery. We must yet address the assertion that the Morton warranty constitutes other insurance and, therefore, bars recovery of insurance proceeds under the terms of the policies.

II. *Other insurance.* Both the Central Iowa and State Farm policies contained clauses disavowing liability in event that the insured "shall have any other contract of insurance" or "other insurance," respectively, on property otherwise covered during the term of the policies. The Central Iowa policy provided:

Unless otherwise provided in writing added hereto this Association shall not be liable for loss occurring

.      .      .      .      .

(d) while the insured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy.

The State Farm policy provided:

Other insurance covering on any property covered under coverage D, E and F is prohibited unless otherwise provided in writing and added hereto.

If during the term of this policy the insured shall have any such other prohibited insurance, whether collectible or not, the insurance under this policy shall be suspended and of no effect.

Morton Buildings warranted in favor of Gustafsons and Stolte:

For a period of 5 years to repair, or in its discretion, to replace free of charge the building framework including roofing or siding panels, if directly damaged by snow or wind loads. Morton Buildings does not agree to repair damage by flying or falling objects, damage to doors only, damage to interior walls, ceilings, partitions, equipment or contents, or preparation of the site.

■ Prohibitions against the insured securing "other insurance" apply to insurance obtained by the same insured on the same property. *American Alliance Insurance Co. v. Brady Transfer and Storage,* 101 F.2d

144, 147 (8th Cir. 1939). *See Collins v. Iowa Manufacturers' Insurance Co.,* 184 Iowa 747, 756–57, 169 N.W. 199, 203 (1918). In determining whether "other insurance" exists within the meaning of such prohibition, courts inquire whether there are two or more policies covering the same interest in the same subject matter against the same risk. *United National Insurance Co. v. Philadelphia Gas Works,* 221 Pa.Super. 161, 289 A.2d 179, 181–82 (1972); *Wyman v. Allstate Insurance Co.,* 29 A.D.2d 319, 288 N.Y.S.2d 250 (1968). Applying these considerations to the present case, we must determine whether the Morton *warranty* constituted other, additional *insurance* covering the Gustafson and Stolte buildings against wind damage.

In construing insurance policies we have stated that:

The insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitation or exclusionary clause in clear and explicit terms. Additionally, the company has the burden to prove the applicability of the policy provision.

*Zenti v. Home Insurance Co.,* 262 N.W.2d 588, 590 (Iowa 1978); *State Farm Automobile Insurance Co. v. Malcolm,* 259 N.W.2d 833, 835 (Iowa 1977). Where, nevertheless, the language of a policy is ambiguous, we have said:

An insurance policy is a contract of adhesion and therefore its provisions will be construed in a light most favorable to the insured. In keeping with that principle, exclusions are strictly construed against the insurer.

(Citation omitted.) *Id.* at 836; *Westhoff v. American Interinsurance Exchange,* 250 N.W.2d 404, 409–10 (Iowa 1977).

■ Application of these principles to the present case demonstrates that the manufacturer's warranty on Morton buildings cannot be considered "other insurance." The insurance companies assumed the duty to clearly and explicitly express any limitation of liability on the basis of "other insurance." Indeed, the companies have the burden to prove applicability of

the "other insurance" clauses to warranty replacement of damaged property. Defendant companies have failed to meet this burden of proof here.

We hold the Morton warranty is not "other insurance" within the meaning of defendants' insurance policies.

This result, we believe, is consistent with our effort to "effectuate the reasonable expectations of the average member of the public" in construing and applying standardized insurance contracts. *Malcolm*, 259 N.W.2d at 836; *Steinbach v. Continental Western Insurance Co.*, 237 N.W.2d 780, 782 (Iowa 1976).

We have considered all contentions raised by defendants and find them without merit. The trial court was right.

AFFIRMED.

All Justices concur except LeGRAND, J., who concurs in the result.